Read v. Howe.

| 39 | 553 |
| 83 | 527 |

| 39 | 553 |
| 114 | 567 |

| 39 | 553 |
| 127 | 83 |

READ ET AL. v. HOWE ET AL.

1. **Administrator**: SALE: FRAUD. A statement of the facts which were held insufficient to set aside an administrator's sale on the ground of fraud.

2. ———: DISCHARGE OF: BURDEN OF PROOF. An administrator who has been discharged by a court of competent jurisdiction is presumed to have received only proper credits upon his account with the estate, and the burden of proof is upon the party asserting the contrary.

3. ———: SALE OF REAL ESTATE: JURISDICTION. Notwithstanding the petition of an administrator for the sale of real estate is in some material respects defective, the fact does not authorize the sale to be set aside on the ground that the court did not, by such petition, acquire jurisdiction.

4. ———: ———: NOTICE TO HEIRS. Under Sec. 2376 of the Revision, the publication of a notice of sale for two weeks in a weekly newspaper, as ordered by the court, was held to be sufficient.

5. ———: APPOINTMENT OF: SPECIAL ADMINISTRATOR. That one was appointed administrator before the time limited for the application of those nearer in relationship, but was continued in the management and settlement of the estate, does not constitute him a special administrator, and a sale of real estate by him cannot therefore be disturbed for want of jurisdiction.

6. ———: SALE BY: PURCHASE OF PROPERTY BY THE ADMINISTRATOR. Where property, sold at an administrator's sale, was purchased by his attorney and his brother, and he afterwards sold the same and derived benefit from the profits of the transaction, equity will set aside the sale if the property remains in the hands of the original purchasers.

7. ———: ———: ———: INNOCENT PURCHASERS. If the property has passed into the hands of a *bona fide* purchaser for value, the sale will be sustained, and the administrator charged with the whole sum which should have been realized therefrom.

## *Appeal from Blackhawk District Court.*

### TUESDAY, OCTOBER 20.

PLAINTIFFS, heirs of Prescott H. Read, who died intestate in Blackhawk county, on the 31st day of August, 1859, allege that C. K. Howe was, on the 5th day of September, 1859, appointed special administrator; that he took possession of the personal property and credits, and appropriated the same to his own use, amounting, including interest, to $16,000.

That he fraudulently effected a sale of the real estate, amounting to 1443 83-100 acres; and that, by false and fraudulent reports to the county judge of said county, he procured his discharge as said administrator.

The petition prays for a full accounting and judgment for the amount found due against the defendant, C. K. Howe, and his sureties, Oren E. Hardy and Myron Smith, and that the sales of the real estate be decreed null and void.

The cause was tried by the first method of trying equitable issues. Judgment was rendered against C. K. Howe for $16,248.61, and against his sureties for $16,000, the amount of the administrator's bond, and the sales of real estate were set aside. Defendants appeal.

*Boies, Allen & Couch,* for appellants.

*Ordway & Husted,* for appellees.

DAY, J.—I.   After a very careful examination and re-examination of the entire testimony in this case, we feel constrained to hold that the fraud alleged to have been committed by the administrator, in effecting a settlement with the county court, has not been fairly established by the evidence.   On the 21st of September, 1859, the defendant, C. K. Howe, filed in the county court of Blackhawk county, an inventory of the estate of the decedent.   A large amount of the credits included in this inventory were owing by persons residing in Illinois.   Mary Read, who had been the administratrix of Prescott H. Read, in the State of Illinois, having resigned, the defendant, Howe, was upon his own petition appointed administrator *de bonis non.* On the 28th day of November, 1862, he filed in McHenry county, Illinois, an inventory; and on the 29th day of January, 1863, he filed an additional inventory.   It is conceded that the property embraced in both these inventories was included in the original inventory filed in Blackhawk county.   In June, 1862, he paid Mary E. Read the amount of two judgments which she held against the estate, aggregating $5,000.

*1. ADMINISTRATOR: sale: fraud.*

On the 29th day of January, 1863, defendant, Howe, filed in the county court of Blackhawk county a report, charging himself with amount of appraisement bill, error in inventory and appraisement and interest on notes transferred to Mrs. Read to pay judgments in county court of Illinois, aggregating $14,423.91, and crediting himself with the two inventories filed in Illinois, amounting to $6,458.80, and with amount paid Mrs. Read on judgment against the estate, $4,382.38, and with amount of above interest paid Mrs. Read, $1,617.62.

The petition alleges that this and the other reports are false and fraudulent in this:   " That he is credited with full amount of inventories filed in Illinois, above mentioned; and he is also credited with $4,382.38, and interest, $1,617.62, as paid Mrs. Mary E. Read in satisfaction of the judgments above referred to, while in fact she was paid with part of the same claims, and that the same were paid in part with the interest due on said claims, and she received no pay except said notes and interest."

The ground of complaint here is that the report shows that the administrator was credited with the entire amount of the claims inventoried in Illinois; that he paid Mrs. Read with part of the same claims, and that he has received credit in his report with the payments made Mrs. Read, thus receiving double credit for part of the claims inventoried in Illinois. It is urged that, inasmuch as the report is fraudulent in this particular, the settlement subsequently made with the county court, and the discharge of the administrator and his sureties, must be set aside, and that the administrator must account anew for the disposition made of the entire assets of the estate. And this seems to have been the view taken in the court below, for the defendant and his sureties were held liable for the entire inventory and appraisement.

If this fact, alleged in the petition, and which is made the principal ground of complaint, appeared from the report, or from it in connection with the other evidence, it would show conclusively either mistake in the report, or fraud, and probably, unexplained, would justify the conclusion that fraud had been perpetrated. But from a very careful examination of the various inventories, and all the other testimony, we are unable to find that this allegation of the petition is sustained.

A copy of the settlement between defendant, Howe, and Mary E. Read was produced, showing the names of the persons, claims upon whom were transferred to Mrs. Read in satisfaction of her judgments. The amounts of these respective claims are not shown, so that we are not able to determine beyond question, to what inventories all belong.

But it does certainly appear that the greater amount of them are not included in the inventories filed in Illinois, and it does not affirmatively appear that any of them are so included. We are, therefore, fully warranted in asserting that the evidence does not show that Howe has received a double credit on account of some of the claims inventoried in Illinois.

We discover no satisfactory evidence of fraud in the report. The petition alleges that defendant is credited with $1,590.96 for worthless notes, without any specification or evidence that

they are worthless; and that the reports contain charges for services and expenses not justly chargeable to the estate. Of the latter charge there is no evidence whatever.

As to the former, it is to be borne in mind that the report now under consideration is not the final report. The final report was filed, and the administrator discharged on the 22d day of June, 1864. This report cannot now be found on file in the probate court, and no effort to prove its contents has been made. The record shows, however, that the administrator was examined on oath as to his claim, and that the court became satisfied that his account was just and reasonable.

The defendant being discharged by a court of competent jurisdiction, it must be presumed, in the present state of the

2. ——: ——: record, that the administrator was not credited
discharge of. with claims as worthless, without proper proof of the fact, and the burden of proof is upon the party who asserts, the contrary.

It may be that the report contains errors. There are some things in it which we cannot, with the evidence before us, fully explain. For instance, the judgments in favor of Mrs. Read aggregated $5000, and the report shows a payment to her of claims, including interest, amounting to $6000. And yet this fact may have been fully explained at the final settlement. That it is susceptible of reasonable explanation, we presume no one will deny. Mrs. Read had judgments against the estate. She took in discharge of them notes due the estate, as the evidence shows, at her own risk respecting the solvency of the makers. It is not unreasonable to suppose that, exchanging judgments for such paper, she should be allowed the paper at less than its face. In fact, the evidence shows affirmatively that one of the notes was transferred at a discount. But the administrator was chargeable with the face of these notes and interest, and if he transferred them in settlement of demands against the estate, it is clear that he should be credited in his account with the face of the notes and interest, especially as he charged himself with the interest in his report.

Clearly this discrepancy is not of such a character as to

justify us in declaring the whole report fraudulent, and in setting the settlement aside. It may be an error in the report. But the settlement is assailed on the ground, not of mistake, but of fraud. The presumption is that, whatever may be the character of this credit, it was fully explained or corrected before the administrator was discharged.

It is urged that the defendant was not properly credited with the inventories filed in Illinois; that he should have collected the claims due there, and accounted therefor to the probate court of Blackhawk county. This may be admitted. And yet it does not follow that the discharge is fraudulent. Inasmuch as he has not settled these claims in this state, we suppose he may be required to do so in Illinois. We think the evidence fails to show a fraudulent discharge, and that all the inferences drawn from, and the conclusions based upon, the existence of such fact, are erroneous.

It follows that the court erred in setting aside the settlement, and in charging the defendant, Howe, and his sureties with the amount of the appraisement.

II. We come now to the consideration of the questions respecting the real estate. The report of the administrator, filed January 29, 1863, showed that the estate was indebted to the extent of $1943.68. On the 10th day of February, 1863, the administrator filed his petition for an order for the sale of real estate, the material portion of which is as follows:

"Your petitioner, C. K. Howe, the administrator of the estate of P. H. Read, late of Blackhawk county, Iowa, now deceased, represents that he did, on the 29th day of January, A. D. 1863, file in this office his report, stating and giving a full account of all the claims existing against the estate, and of the disposition made of the personal estate of said deceased, and said petitioner further states, that there are now existing against said estate a large amount of claims for counsel fees and other necessary expenses in the administration thereof, within this State, which have not been paid, and for the payment of which there are no personal assets in the State of Iowa. That said debts and expenses, as shown by said report, amount in the aggregate to the sum of $1943.68, for the pay-

ment of which petitioner can realize nothing at present from any source from said estate, except it be from the real estate belonging to the same, the personal property in this state having been wholly exhausted. * * * * Wherefore he asks the order of the court for the sale aforesaid. "

The record contains the following recitals:

" This court, being satisfied that the matters and things set forth in the above petition [are true], ordered that the petitioner give notice to the heirs of said estate, by publishing the same in the Waterloo Courier for two consecutive weeks, and that this case will be heard on March 4th, 1863."

" March 4th, 2 o'clock P. M., 1863. This case being called, and the affidavit of publication being filed by the administrator, and the court being satisfied that the orders of the court had been complied with, ordered and decreed that the said administrator be permitted to proceed to sell so much of said land as shall be necessary to pay the costs, expenses and indebtedness of said estate of P. H. Read, and as the law shall or may direct in such case made and provided, at public sale.

SAMUEL D. SHAW, County Judge."

1. It is claimed that the court had no jurisdiction to order the sale, because of defects in the petition. It is urged that the petition is defective in that it does not show that the property inventoried in Illinois was accounted for, because there was no statement of the claims against the estate; because there was no statement of the disposal of personal property; and because it shows on its face that it was not necessary to sell to pay debts, and states that there is no personal property in this state. It may be admitted that, upon appeal, this petition would be held insufficient to authorize an order for the sale of real estate. But it by no means follows that it is not sufficient to invoke the action of the court in the premises. The subject matter is within the jurisdiction of the court. That the law confers. This jurisdiction is called into exercise by the filing of a petition and the service of notice. The court, of necessity, must determine the sufficiency of the petition. An erroneous

*3. ——: ——: sale of real estate: jurisdiction.*

determination may be reviewed upon an appeal or writ of error. But it cannot be that for such erroneous determination, sales of real estate may be set aside in collateral proceedings, without regard to the number of innocent parties through whom the title may have passed. Yet this is the result if the petition, in some material respects defective, confers no jurisdiction upon the court. In such cases nothing but the statute of limitations could give repose. See *Morrow v. Weed*, 4 Iowa, 77; *Wade v. Carpenter*, *Ib.*, 361; *Little et al. v. Sinnet*, 7 Iowa, 324; *Pursley v. Hays*, 22 Iowa, 11; *Shawhan v. Loffer*, 24 Iowa, 217.

2. It is claimed that there was no notice to the heirs such as the law contemplates, that the notice should be such as is required for original action. Section 2376 of the Revision provides that, before any order for the sale of real estate can be made, notice, as the court may prescribe, must be given to all persons interested. The record shows that this section was fully complied with. The notice we regard as sufficient.

*4. —: —: notice to heirs.*

3. It is claimed that Howe was only a special administrator, and that he had no authority to sell real estate. It is true he was appointed before the time limited for the application of those standing in nearer degrees of relationship, but. he was afterward continued in conjunction with the widow of decedent, and by her resignation the whole management of the estate devolved upon him. In fact, he was the only one who had anything, actively, to do with the management of the estate. He was not appointed. and did not qualify as special administrator, and there is, it seems to us, no warrant for regarding him as such. The sale cannot be disturbed on the ground of want of jurisdiction to make it.

*5. —: —: apportionment of: special administrator.*

III. We come now to the consideration of other questions respecting the sale.

The administrator sold 1443 83-100 acres of land for $950, and lot 7 in block 60 in East Waterloo for $16, and lot 10 in said block for $73.00.

The land was purchased by S. P. Brainerd, the attorney of

the administrator, and the lots by his brother, John P. Howe.

6. ——: ——: The evidence quite clearly satisfies us that these pur-
*sale by: pur-chase of prop-erty by ad-ministrator.* chases were made in the interest and for the benefit of C. K. Howe, the administrator.    He afterward controlled the same, negotiated sales, and, we think from the evidence, derived the benefit from the profits.    The land was worth, at the time of the sale, at least $2.00 per acre, and the lots were worth $270.    If this property remained in the possession of the original purchasers, there can be no doubt that equity would set the sale aside.    *Sypher v. McHenry,* 18 Iowa, 232.    All the land, however, except the NE. $\frac{1}{4}$ 17, and the SW. $\frac{1}{4}$ 14, 89, 16, has passed into the hands of third par-

7. ——: ——: ties, and it is not questioned in the argument that *innocent pur-chasers.* they are innocent purchasers for value.    The sale of the said NE. $\frac{1}{4}$ of 17, and the SW. $\frac{1}{4}$ of 14, will be set aside.    The sale of the remaining lands, to-wit 1123.83 acres; together with the town lots, should have realized the sum of $2,527.66.    Defendant is properly chargeable with this sum. The entire avails of the sale, to-wit, $1,039.00, we must presume, were accredited to the estate in the settlement.    The court below found that C. K. Howe, as an heir to the estate, is entitled to $532.34, and allowed him a credit for that amount in the settlement.    But this finding was based upon the conclusion that the entire amounts of the inventories were assets now in defendant's hands, belonging to the estate, and that no claims exist against them in Illinois.    Our conclusion is reached upon a basis which may modify materially the amount to which defendant is entitled as an heir, and which affords us no means, from the record, of determining that amount.    We therefore leave his claim as an heir open for future adjustment.

The amount of the avails of the sale paid the estate will be deducted from the amount which should have been realized from the lands, the sale of which is not set aside, and for the balance, to-wit, $1,478,66, plaintiffs will have judgment. Plaintiffs will pay the costs of this appeal.

REVERSED.