IN RE ESTATE OF WILL E. JOHNSTON.

HARRIETT JOHNSTON, Appellant, v. A. C. JOHNSTON, Administrator, et al., Appellees.

EXECUTORS AND ADMINISTRATORS:     Interlocutory Accounts—
1  Nonfinal Adjudication.  The final adjustment of the interlocutory accounts and expenditures of an administrator and of the fitness and propriety of his management and of an allowance of attorney fees, no loss presently appearing, may well be deferred until the hearing on the final reports. Especially is this true when the matter is presented on a quite indefinite record.

**WITNESSES:** Examination—Personal Transactions. An administrator under examination as to a security transferred by him to the estate may be excused from answering as to the manner in which the security was obtained or as to the consideration paid therefor, it appearing that such transaction was a personal one, which did not involve the funds of the estate.

*Appeal from Ida District Court.*—E. G. ALBERT, Judge.

DECEMBER 11, 1924.

OBJECTORS appeal from an order in probate *in re* the estate of Will E. Johnston, deceased. The facts are stated in the opinion.—*Modified and affirmed.*

*M. M. White, Charles Hutchinson,* and *Arthur C. Pancoast,* for appellant.

*A. C. Johnston* and *Campbell & Campbell,* for appellees.

STEVENS, J.—I. Will E. Johnston, a member of the bar of Ida County, died testate, August 16, 1915, seized and possessed of property, real and personal, of the value of more than $350,000. He was survived by his father, two brothers, A. C. and Donald, and three sisters, Jessie and Mable Johnston, and a married sister, Mrs. Conn. By the terms of the will, the estate was to be held intact and managed by his executors during the lifetime of the father, who, at the time of the trial below, was over eighty years of age. The proceeds and income from the estate were to be used, first, to provide a suitable home and suitable living for the testator's father, and for the education of his sister Mable and his brother Donald. Frank B. Johnston and Jessie R. Johnston were named as executors. Frank B. predeceased the testator; and, on or about November 1, 1915, A. C. Johnston was appointed administrator, with will annexed. Since his appointment, the estate has been managed by himself and Jessie, who qualified as executrix. A. C. Johnston and the testator were in partnership at Ida Grove, the law library and office furniture being owned by the latter, who was the senior member of the firm. Except the office library and furniture,

1. EXECUTORS AND ADMINISTRATORS: interlocutory accounts: non-final adjudication.

which were devised to A. C. Johnston, the residue of the estate, upon the death of A. J. Johnston, the father, was devised to Jessie R. and Mable, Frank B., A. C., and Donald Johnston, share and share alike, with the exception that the appraised value of the library and office furniture was to be deducted from the share of A. C. Johnston. Frank B. Johnston was survived by a daughter, Harriett, who is entitled to the portion of the estate that would otherwise have gone to him.

This controversy arises on objections of Harriett Johnston to the reports of appellees and to the management and conduct of the estate by them. The controversy on this appeal is limited to four general subjects. Retta Johnston, the mother of Harriett, resided in Omaha at the time of testator's death, where she was engaged in conducting a boarding house. The Johnston family feeling that Harriett should have better surroundings, A. C. Johnston induced them to move to Des Moines, under a written contract by which he agreed to furnish them a home free of rent, and to pay them $100 per month for its maintenance. About a year after this contract was entered into, Retta Johnston remarried, and removed to Omaha. After her marriage, she received $40 per month for the use and benefit of Harriett. The total sum paid by A. C. Johnston to Retta Johnston was $7,407.29. The contract referred to above was executed prior to, or about, the time A. C. Johnston was appointed administrator of the estate, and does not purport to have been executed in a representative capacity. He had, however, previously been appointed guardian of Harriett. Prior to his death, the testator acted in that capacity. The sums advanced were charged by the administrator and executrix against the share of Harriett in the estate. The objection they urge to this charge presents the first question for consideration.

It is their contention that A. C. Johnston agreed to make the monthly payments out of his own funds, and not to charge the same against Harriett's interest in the estate; and that, whether this is so or not, he had no authority to make the contract in his capacity of guardian or administrator. The court below found that all sums advanced prior to the remarriage and removal of Retta from Des Moines to Omaha should not be charged against Harriett, but that all subsequent advancements

were properly so charged; and they were approved. This order was based upon the finding on the facts that the contract was abandoned when the mother returned to Omaha. The question of abandonment was one of fact, and for the determination of the court. Its finding thereon has much the same weight as the verdict of a jury. Considering the original purpose of the contract, together with the circumstances shown, we see no reason to disturb the order of the court below at this point.

II. The total income from the estate from August 16, 1915, to September 30, 1921, was $54,477.96. By far the larger part of this income has been charged to the care, maintenance, and support of A. J. Johnston, the father. It appears that the home in which the testator resided was owned by him, and that his father, sisters (except Mrs. Conn), and Donald resided with him. The expenses of the home were paid by the testator. The testator delighted in travel, and, at different times, visited the various countries of Europe, as well as made extensive tours of the Orient. On one of his trips to Europe, he took his aged father with him, paying all of the expenses thereof. Shortly prior to his death, he visited China and Japan, and, according to the testimony, expressed a desire that his father and sisters might sometime in the future accompany him on a second trip to Asia. Subsequent to his death, the father and daughters went to Asia, making the trip around the world. Since the death of testator, the family have resided together, as before. All of the living expenses, together with the cost of the trips abroad, were paid out of the income of the estate.. In addition to the ordinary living expenses, an automobile costing $2,000 has been furnished for the use of the father. The will of testator provided:

"First. I will and devise that my property shall be held intact, except as hereinafter provided, by my administrators hereinafter named during the life of my father. And out of the incomes and proceeds from said estate I will and direct that said executors provide a suitable home and suitable living for my said father. * * *"

The expenditure of large sums in travel and the expense of maintaining other members of the family are complained of. The record is rather brief as to the condition of the father, and

as to what sum would be sufficient to maintain him suitably in the home provided. It would be impossible for the court, on the record before us, to determine what portion, if any, of the funds expended in travel and for the maintenance of other members of the family should not be charged against the estate. The amount is large, and we are disposed to hold that these items should be left open for the further consideration of the court. A. J. Johnston is still living, and the matter may yet be adjusted without any loss to the objector. All of the members of the family referred to are of legal age, and are making no objection of record to the expenses referred to, and are apparently satisfied with the management of the estate. It is not necessary to reverse the holding of the court below on this point. It is sufficient to say that the order and finding of the court shall not be deemed conclusive, but shall be subject to its further consideration and orders, upon a showing requiring a modification thereof.

III. It is further urged by objectors that the funds of the estate have been improvidently managed and invested, and that A. C. Johnston has become heavily indebted to the estate. It is conceded by the appellees that some of the funds of the estate have been invested in second and third real estate mortgages, and that A. C. Johnston is indebted to the estate in a considerable sum, on which, by stipulation of the parties, he is to pay interest at the rate of six per cent. The investment of trust funds in second and third mortgages is certainly not to be commended, and should be abandoned; but it appeared upon the trial below that, up to that time, the estate had sustained no loss on account of these investments. In fact, no losses were shown to have occurred to the estate in any way. It is suggested in argument by counsel for appellees that certain of the investments complained of have been adjusted since the order of the court complained of was entered. The record disclosed the failure of appellees to file annual reports, as required by law. An accountant selected by appellants made a thorough investigation of the accounts of the administrator and executrix, and all their doings as such since their appointment, and reported his findings to the court. The expense of this investigation was paid out of the funds of the estate. The audit of the

accountant was accepted by appellees, and filed as a part of their report. A slight discrepancy appearing in one item was shown on the trial to be in harmony with the claim of appellees. The adjustment of the accounts and the management of the estate by appellees remain open for the future orders of the court and for any further investigation justified by the facts. There is nothing in the record to indicate that a loss is likely to result to the estate because of the investments complained of.

IV. The court, in pursuance of a stipulation entered into by the parties, fixed the compensation of A. C. Johnston at $2,500 per year, and ordered that the same be credited upon his indebtedness to the estate. As stated, the estate was valued in excess of $350,000, and consisted of stocks, bonds, accounts, notes, and mortgages, and about 1,500 acres of real estate, located in Iowa and other states. If it shall appear, when the time arrives for the final settlement of the estate, that its affairs have been carefully and competently administered, and that the investments made by appellees of the assets coming into their hands are good, then, in our opinion, the sum allowed is not excessive. Much time and ability have been necessary in the proper management and conduct of the affairs of the estate. Some legal services have been rendered by A. C. Johnston, without other charge to the estate than his compensation as administrator.

V. It developed upon the trial that certain notes and mortgages have been assigned by A. C. Johnston to the estate. He was asked, upon cross-examination by counsel for appellant, 2. Witnesses: examination: personal transactions. what he paid for one of these items, a note and mortgage of $12,000, signed by one Miller. He declined to state the consideration for the note, upon the ground that it was wholly a personal transaction, from which he received no profit whatever. The court sustained the objection of the administrator, and did not require him to divulge what, or in what form, he paid for the note. We discover no error in this ruling. It goes without saying that, if the administrator used funds of the estate with which to make a profit, he is bound to account therefor. The transaction, however, by which the item in controversy was obtained, was a personal one, and did not in any respect involve the funds of the estate. The

estate still being open for settlement, appellees may be required to account fully and unreservedly for all funds belonging to the estate. The rights of all parties ·may, and must, be fully protected. Appellees should proceed to the best of their ability, with due regard to the best interests of the estate, to get its personal assets in shape for final distribution, which, in the natural course of events, cannot be long delayed.

Except as stated, the finding and order of the court below is—*Modified and affirmed.*

Evans, Preston, and Vermilion, JJ., concur.