LOUIE BECKER et al., Appellees, v. BECKER BROS. et al., Appellants.

**EXECUTORS AND ADMINISTRATORS:**  Accounting—Setting Aside Final Report.  Principle reaffirmed that the final report of an executor or administrator, after due approval and discharge, will be set aside only on a clear and satisfactory showing of fraud, mistake, or other equitable grounds.  Evidence held to justify such order.

Headnote 1:  24 C. J. p. 1035.

*Appeal from Webster District Court.*—SHERWOOD A. CLOCK, Judge.

JUNE 21, 1926.

Action in equity for an accounting. Decree as prayed. The defendants appeal.—*Modified and affirmed.*

*Healy, Thomas & Healy* and *Hanson & Schaupp,* for appellants.

*Kelleher & Mitchell,* for appellees.

STEVENS, J.—John and C. F. Becker, in 1885, purchased a tract of seven or eight acres near the Des Moines River in the city of Fort Dodge, and engaged in the business of gardening under the firm name and style of Becker Bros., until October, 1917, when John died. John Becker died testate, and by his will devised all of his property, of every kind, nature, and description, to his brother and business partner, C. F. Becker, in trust, for the exclusive use and benefit of his five children, Helen, Fred, John, Christ, and Louie, and designated C. F. Becker as executor of the estate, requesting that he be permitted to serve both as trustee and executor without bond. The will gave the trustee full power to continue the business, and to sell and dispose of property, real and personal, without order of court, and whenever and at whatever price he should deem fit and proper, and further authorized him to invest and reinvest the proceeds and to manage and control the same, "being held accountable only for the just and honest administration of the estate" and trust funds. The trust was to continue until Louie should attain the age of 25 years, "unless my said trustee shall decide that said trust shall be sooner terminated and distributed."

C. F. Becker qualified as executor, and assumed charge and management of the partnership business, which was continued as before, the children of John taking his place in the firm. The brothers and their families resided together in the residence on the property, when purchased, in separate apartments, for several years, and until C. F. Becker erected for himself a new house on the same tract. John's wife died several years prior to 1917, but the two families continued to reside upon the premises. John always kept the books, and drew all checks on the firm accounts. Since his death, the checks have been signed by C. F. Becker. After her father's death, Helen assisted in the business by keeping account of sales, making statements, and receiving orders by telephone. For these services she was paid $8.00 per week. John and Christ joined the army, in 1919, and John returned in 1921. Fred worked for the firm for a short time

after his father's death, and resided in the home until he was married. Louie, who was employed away from home, worked in the garden evenings. Fred was employed by a telephone company, and also did work in the garden evenings. During all of the time while John lived, the brothers withdrew a small weekly amount from the partnership funds, and this was continued after his death, payments being made to the respective parties upon a basis of equality. The wages paid to the members of the families were small, Carrie Becker, the wife of C. F., receiving 10 cents per hour for labor performed by her in the gardens. C. F. Becker did not keep books. Reliance was placed largely upon the balance shown by the bank books, for knowledge of the firm's condition. During a portion of the time, Louie collected the accounts for produce sold, and deposited the money in the bank. Statements of the accounts were kept and furnished him by Helen. During the winter seasons, the firm bought and sold potatoes and other vegetables. Louie was a minor at the time of his father's death, and C. F. Becker was appointed guardian. $2,000 life insurance upon the life of John Becker was paid to the executor.

In April, 1918, John and Fred, who were married, with their wives and Christ conveyed all of their interest in the real estate owned by the partnership to Helen and Louie, for a separate consideration of $1,000. In September, 1921, Helen, who in the meantime had married, her husband joining, conveyed her interest in the property to her brother Louie, for a consideration of $3,400; and on September 16, 1922, Louie sold the same to W. F. Becker for a consideration of $6,500. Helen and her husband, however, continued to reside in the old home until the fall of 1924.

C. F. Becker, in due time, filed an inventory of the real and personal property of the estate. The only personal property listed in the inventory was an "undivided one-half interest in the property and business of Becker Bros." Shortly after the deeds were executed to Helen and Louie, C. F. Becker filed his final report as executor, without any details or statement of account further than that the debts of Becker Bros., amounting to $3,144.70, had all been paid, and distribution made to the beneficiaries, for which vouchers were filed, showing payments

of $561.29 to each. On May 11, 1920, the final report was approved, and the executor discharged.

This action for an accounting was commenced in 1923. Appellees alleged in their petition that C. F. Becker received and has not accounted for $1,500 life insurance; that he requested and induced Fred, John, and Christ to convey their undivided interest in the real estate of the firm to Helen and Louie; that, to accomplish this purpose, he asserted that he had the right to do so, and would himself sell the property if they did not sign the deeds; that he fixed the consideration arbitrarily, and to suit himself; that, at the time, he sustained confidential and fiduciary relations with all of the parties; that he had not previously disclosed, and did not then disclose, to the three brothers any facts concerning the property of the estate or business of the firm; and that, but for his acts and conduct, the deeds would not have been executed. It is further charged in the petition that the conveyance from Helen and her husband to Louie, and that from Louie to W. F. Becker, were brought about and induced by him and his father, C. F. Becker, and that the title to the property conveyed thereby was obtained fraudulently, and without adequate consideration.

After a trial lasting many days, during which all of the parties, except Christ, who was absent, were examined and cross-examined with reference to the various transactions and affairs of the copartnership, the court found that C. F. Becker had made no accounting, as testamentary trustee or as executor, except as stated above; that he has never been excused from making an accounting; that all of the conveyances above mentioned were secured and induced by the wrongful conduct of C. F. and W. F. Becker, as alleged in the petition; that the distribution made to the heirs was of a portion only of the profits of the business, and did not include the personal property of the estate; that C. F. Becker abused his trust and ignored his fiduciary relations to appellees. It was directed that the order of the court approving the final report and discharge of the executor be set aside. and that said executor be required to file an account and make full accounting as such executor, and to report the same to the next term of the district court of Webster County, and to give a ten days' notice thereof; that, within 30 days from the date of the decree, he make and render an ac-

counting, as surviving partner, of the copartnership, pursuant to the court's finding. It was further decreed that W. F. Becker might, if he elected, within 30 days from the entering of the decree, reconvey the property to Louie Becker, and demand and receive back the consideration paid him, with 6 per cent interest from the date of such payment; and that, in the event that he failed to do so, he be not permitted to participate in the earnings or profits of the partnership. The decree also made provision as to permanent improvements, special assessments, etc. The court specially reserved jurisdiction of the case until a final report and accounting should be filed, so as to make further necessary orders in the premises.

This appeal is from the above judgment and decree. We shall not attempt to make a detailed statement of the record, but shall refer only to such matters as we deem necessary to the disposition of the questions before us.

The rule that a trustee must act at all times in perfect good faith in administering the trust and in dealing with the beneficiaries thereof is too familiar to call for the citation of authorities to sustain it. He cannot take advantage of his confidential and fiduciary relations with the beneficiaries for his own profit or in aid of third parties. It is likewise true that the final report of an executor which has been approved, and the executor discharged, will be set aside only upon a clear and satisfactory showing of fraud, mistake, or other equitable grounds therefor. *Patterson v. Bell*, 25 Iowa 149; *In re Estate of Douglas*, 140 Iowa 603; *Tucker v. Stewart*, 121 Iowa 714; *Read v. Howe*, 39 Iowa 553; *Daniels v. Smith*, 58 Iowa 577.

It is not claimed that C. F. Becker at any time made a statement to appellees, or any of them, as to the condition of the partnership business, the debts, expenses, property, profits, or anything else. In a general way, they were all more or less familiar therewith. They had resided all their lives upon the tract owned by the partnership and used in the gardening business. The books were always kept by their father, prior to his death; and subsequent thereto, Helen and Louie, at different times, had much to do with the business and keeping the books. Helen made out the statements, and Louie collected the accounts. The property of the partnership consisted of the 7- or 8-acre tract, merchandise, live stock, trucks, tools, etc. Appellees did

not, however, have full and complete information as to the business or profits of the partnership. Evidence was introduced on both sides as to the value of the 7- or 8-acre tract. Appellees' witnesses testified that its value for platting and sale in the form of lots was $16,000. They agreed that the value of the house owned and occupied by C. F. Becker was $3,500. This deducted, the sum of $12,500 was left. They also agreed that the expense of platting and sale would perhaps be something like 20 per cent of the value of the property. The witnesses for appellants testified that the value of the property, exclusive of the residence of C. F. Becker, did not exceed $10,000. This, we think, represents the fair value of the tract. Perhaps mention should be made of the fact that Becker at one time demanded $25,000 for a portion of the property. It is needless to say that he had no buyers.

We find nothing in the record to support the finding of the court that the deed executed by Helen and her husband to Louie, or the deed executed by Louie to W. F. Becker, was induced by fraud, duress, or other improper conduct on the part of either C. F. or W. F. Becker. Helen solicited her brother to buy, and fixed the price she desired, herself. Concerning this transaction she testified:

"When I sold out to my brother Louie, I did some of the talking myself. My uncle and William and, I think, my husband, did some of the talking. I think my husband was in that transaction. What we sold it for, we had figured. I had something to do with it, of course. We bargained on it. We discussed it. My husband joined with me mostly in discussing the whole deal. In that transaction we sold everything—the land and my entire interest in the partnership business—to my brother, Louie. I sold my interest in the personal property down there, truck and horses and the like, and in the bank account and in the hot beds and the new greenhouse. I think everything was included in that $3,400. That was to pay for my interest in the land—in the whole thing. My husband and I were not supposed to take over any of the debts. Louie would step into our place in the business, and have a full half interest in the business. After I made that sale, it was my understanding that Louie and my uncle were the owners of the business, and they were partners. My uncle made no threats to make any sale

to Louis. The reason I sold out to Louie was, it just came up a day or so before we sold.''

Louie admitted that he fixed the price at which he sold the property to W. F. Becker, and solicited him to make the purchase. If C. F. Becker had anything to do with this transaction, it was after Louie had determined upon the price and made the offer to sell. John, Fred, and Christ at first declined to sell to Helen and Louie, and stood out for some time, before giving their consent. They had ample opportunity to ascertain the value of the tract after the demand of their uncle, and before the deeds were signed. More than a year elapsed after the conveyance was made to Helen, before she sold to her brother, and another year passed before the conveyance was made by Louie to W. F. Becker. There is a total failure of proof of fraud or duress on this point. No doubt, the conveyance to Helen and Louie was urged and brought about by C. F. Becker. If the consideration paid was fair and adequate, and C. F. Becker did not profit thereby, the parties should be bound by the transaction. We think it clear that they knew and understood what they were doing, and that they were parting with their interest in the real property of the partnership and the business thereof. Their subsequent conduct confirms this. It is also clear that they did not intend by their conveyance to release their interest in the profits of the business already accrued, nor in the personal property of the estate then on hand which had not been used or otherwise accounted for. This understanding by the parties is evidenced by the distribution which immediately followed the execution of the conveyances. The contention of appellees that the partnership continued after the death of John Becker, and that the same has never been dissolved or otherwise settled, has not been overlooked. It was the duty of the surviving partner, who acted in the capacity both of executor and testamentary trustee, to make a full, final, and accurate accounting of the partnership. This is settled by many authorities. *Western Sec. Co. v. Atlee,* 168 Iowa 650; *Van Aken v. Clark,* 82 Iowa 256; *Starr v. Case,* 59 Iowa 491.

The partnership business was continued, C. F. Becker at all times recognizing the children of John as the owners of an undivided one-half interest in the property and business of the firm. Each of the children, or all together, however, had a per-

fect right to convey their interest in the business and the property of the firm to C. F. Becker, upon terms and conditions that would terminate all relations between them,—this, of course, upon the basis of fair and honest dealing on the part of said Becker. John, Christ, and Fred do not seek to have the conveyance made to their brother and sister set aside, nor does Helen complain of the transfer made by her to her brother Louie. Prior to the conveyance of his interest in the business to W. F. Becker, Louie was a full, equal partner in the firm. He owned the interest of his sister and brothers. C. F. Becker should, nevertheless, account to appellees, or to such of them as have a right to demand such accounting, for all of the assets and profits of the business that were not conveyed by the three brothers to Helen and Louie in the spring of 1919. Beyond this, no accounting may be required. The partnership business ceased as to each when the respective conveyances were executed. That is to say, Fred, Christ, and John parted with their interest in the business in April, 1919, to Helen and Louie. It then became theirs; and, a year later, Helen transferred it to Louie, who became the owner of a one-half interest in the firm; and, in turn, Louie conveyed it to W. F. Becker, with like effect.

Three other matters remain to be considered. The court made no specific finding as to the item of insurance. The disposition of this matter must await the final accounting of C. F. Becker. The question here presented is solely one of fact.

Louie testified that W. F. Becker agreed to reconvey his interest in the property of the firm upon the return of the purchase price paid therefor. Whatever was said on this point was after the transaction was closed. W. F. declined to reconvey, when requested to do so. Louie also claims that he did not intend to part with his share of the bank account, at the time the deed was signed, and asks recovery therefor. This, under the issues, as stated, presents a question of fact only, which the court did not pass upon, and which is yet to be decided.

The provision of the decree respecting a reconveyance by W. F. Becker upon the return of the purchase price, and otherwise affecting his interest in the partnership and his right to participate in the profits, cannot be allowed to stand. If either party to the conveyance is to be believed, this transaction was wholly free from taint of fraud, duress, or undue influence. The

proposition to sell was made by Louie, and the price was fixed by him.

The discussion of counsel covers a much wider range than is necessary to the disposition of the questions before us. The appeal challenges only the sufficiency of the showing made by appellees to sustain the decree setting aside the final report of the executor and requiring an accounting to be made. The decree is, we think, too broad in the particulars indicated. It may be conceded that, if fraud was the only ground upon which the report of the executor could be set aside, it is doubtful if the evidence is sufficient on that point. No statement of the account was ever filed, as required by law. The beneficiaries were and are entitled to know fully the items that went into the account upon the basis of which the distribution was made. The evidence shows that no statement was made to the beneficiaries here concerned, as to the account, as the basis of the acceptance of service or waiver of notice of the filing and approval of the final report.

The order and judgment of the court setting aside the final report and requiring the appellant C. F. Becker to render an account is affirmed. The cause must be remanded to the court below, for further proceedings in harmony with this opinion. The decree of the court below is therefore modified in the particulars indicated, and in all other respects affirmed. The costs will be taxed one third to appellants and two thirds to appellees.— *Modified and affirmed.*

DE GRAFF, C. J., and EVANS, VERMILION, ALBERT, and MORLING, JJ., concur.