John COSTER, Eleanor Coster, Individually; Eleanor Coster, as Conservator of Johnathan Coster, a Minor; and David Coster, Appellants,

v.

Joe P. CROOKHAM, Myron Gordin, Iowa Trust & Savings Bank, and First National Bank of Muscatine, Appellees.

No. 89–1075.

Supreme Court of Iowa.

April 17, 1991.

Rehearing Denied May 13, 1991.

Tom Riley and Peter C. Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Robert G. Allbee and Edward W. Remsburg of Ahlers, Cooney, Dorweiller, Haynie, Smith & Allbee, Des Moines, for appellees Joe P. Crookham and Myron Gordin.

Kenneth L. Keith and Lloyd E. Keith of Keith, Orsborn, Bauerle, Milani & Neary, Ottumwa, for appellee Iowa Trust & Sav. Bank.

David J. Meloy and Patrick W. Driscoll of Stanley, Rehling, Lande & Van Der Kamp, Muscatine, for appellee First Nat. Bank of Muscatine.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This is an action for civil damages brought by income and remainder beneficiaries of an inter vivos trust. Defendants are the trustee, the trustee's investment partner, the lender of a company in which the trustee and partner invested, and a bank which served the trust. A jury allowed recovery on many, though not all, of plaintiffs' several theories of liability. This appeal and cross-appeal present a wide variety of related questions. We cannot resolve all issues on the basis of the special verdicts and must remand some matters for retrial.

John Coster and his wife Eleanor farmed land in Mahaska County. John became acquainted with defendant Joe P. Crookham, an attorney practicing law in Oskaloosa, Iowa, when Coster purchased a farm from a seller for whom Crookham served as conservator.

In 1974 Coster was unable to obtain financing for his farming operation. Part of Coster's difficulties stemmed from spendthrift tendencies. After a local bank refused to finance his 1974 crop year, Coster met with Crookham to discuss his financial problems. Crookham advised the Costers to place their two farms in trust, with Crookham serving as trustee. It was suggested that the bank would feel more se-

cure if legal title to the land and crops were in the hands of a trustee.

Garold Heslinga, another Oskaloosa attorney, prepared identical deeds of trust, one for each farm. Only one trust was created; it covered the Costers' farming and personal needs.

In 1976 Crookham negotiated for the personal acquisition of the stock of Muscatine Lighting Company (Musco). The transaction involved the stock transfer by the owners of Musco to purchasers Crookham, Myron Gordin, and G & L Industries (G & L was owned exclusively by Gordin and Crookham). In addition to Crookham, Gordin and G & L, who were major investors, five other investors[1] were to acquire some stock in Musco. In return the sellers were released from existing financial obligations to defendant First National Bank of Muscatine (FNB). FNB had been a lender to Musco for a number of years prior to dealing with any parties involved in this suit. The closing took place July 9, 1976.

Before closing, George Shepley, president of FNB, reviewed the financial statements of Crookham, Gordin, and G & L Industries. FNB agreed to the proposal, and all investors gave FNB personal guaranties of the debt of Musco to FNB.

At the time of closing, Shepley stated he had learned that the small business administration (which had guaranteed part of the debt from Musco to FNB) would not release the personal guaranties of the prior owners. It was agreed it would be necessary to obtain the release of the small business administration. FNB then indicated it would require additional guaranties in order for it to provide the necessary financing.

Crookham responded by suggesting the Coster trust might guarantee the Musco debt. Crookham told Shepley he had authority to sign a guaranty on behalf of the trust and, after studying the trust deed, Shepley accepted his guaranty. Crookham,

as trustee, executed an unlimited guaranty to the bank.

The parties vigorously dispute the effect of the guaranty. Plaintiffs contend that, without the guaranty, the purchase would not have been consummated. Defendants submitted impressive evidence, including Shepley's testimony, to show that the guaranty was made solely to obtain operating funds for Musco, and that Musco purchasers could have acquired the stock without it. We take it from the jury's special verdict that the plaintiffs' version of this dispute is established.

FNB never called upon the trust to make any payment under the guaranty, nor did the trust suffer loss. FNB eventually released the trust from the guaranty.

Defendant Iowa Trust & Savings Bank (Iowa Trust) first began lending money to the Coster trust and the Costers individually in 1982. In 1985 Crookham and the Costers negotiated with Iowa Trust for the restructuring of the trust debt, and Iowa Trust agreed to purchase the trust debt from FNB.

Crookham and the Costers also desired Iowa Trust to become involved with managing the Coster trust because Crookham was often unavailable and sometimes needed assistance in trust matters. Iowa Trust thereafter provided bookkeeping and accounting services for the trust and for the Costers personally. One of the disputed issues in the case is whether Iowa Trust served in the capacity of cotrustee. Although Iowa Trust denies it did so, we take it from the jury verdict that the bank did serve in that capacity. We also take it from the jury verdict that plaintiffs established their allegation that the pledge of the trust resulted in enormous profits to Gordin and Crookham which they would not otherwise have obtained. Those profits appear to be over $3,000,000. Neither Crookham nor Iowa Trust ever sought or obtained court permission to engage in self-dealing, a requirement to do so under Iowa

---

1. John and Eleanor Coster are mentioned as personal investors. That mention is not important because it is not shown, neither is it claimed, that any of the plaintiffs, nor anyone for them, sought or obtained any personal advantage or gain with respect with the Musco stock as a result of what followed.

Code section 633.155 (1991). The trust was not submitted for court approval or supervision, though, as will appear, the trustees persuaded a district court judge to enter an order approving one transaction.

I. By a special verdict the jury found Crookham breached his fiduciary duty by engaging in self-dealing when he issued the trust's guaranty to acquire Musco stock. No damages were fixed for this breach because, by another special verdict, the jury found no loss resulted to the trust. In framing the special verdicts the trial court took the position that the trust beneficiaries could recover for the breach only to the extent the trust suffered a loss. Plaintiffs challenged this limitation at trial and assign the ruling as error on appeal.

■■■ The trial court relied on our decision in *Estate of Klein v. Ware*, 229 N.W.2d 753, 755 (Iowa 1975). The reliance was misplaced. Our holding in *Klein*, a probate case in which a fiduciary was allowed by unanimous consent to bid on estate assets, is limited to its facts. *Klein* does not limit recoveries to out-of-pocket losses in all cases where trustees have breached their duties to obtain personal gain. A trustee cannot use trust assets for personal gain and keep the profits. The beneficiaries' recovery for such a breach is not limited to those cases in which they can show the breach resulted in a direct loss to the trust.

■■ We have repeatedly held that a trustee cannot use its position, directly or indirectly, for its own advantage or profit. *Van Gorp v. Van Gorp*, 229 Iowa 1257, 1261, 296 N.W. 354, 356 (1941); *Becker v. Becker Bros.*, 202 Iowa 7, 11, 209 N.W. 447, 450 (1926); *Linsley v. Strang*, 149 Iowa 690, 694, 126 N.W. 941, 942 (1910). A fiduciary must account for any profits personally obtained by use of trust assets. *See In re Johnston's Estate*, 198 Iowa 1372, 1377, 201 N.W. 72, 75 (1924).

■■ The law recognizes three alternative remedies available to beneficiaries when the trustee has breached the duty of loyalty to the trust. First, the trustee is obviously charged with any loss to the trust estate. Second, the trustee is liable for any profit made through the breach. Third, the beneficiary may recover from the trustee a profit that would have accrued to the trust if there had been no breach. Restatement (Second) of Trusts § 205 (1959); Bogert, *Trusts and Trustees* § 862, at 42–43 (2d rev. ed. 1982); Fratcher, *Scott on Trusts* § 205, at 237 (4th ed. 1988).

In determining which remedy is most proper the beneficiary "can choose the remedy that seems most advantageous...." Fratcher § 205, at 242.

The Restatement (Second) of Trusts is also instructive:

The trustee violates his duty to the beneficiary not only where he sells trust property to himself individually, but also where he uses the trust property for his own purposes. Thus, he cannot properly use trust money in his business, or lend trust money to himself, or lease to himself land which he holds in trust.

Restatement (Second) of Trusts § 170 comment 1 (1959).

The trustee is accountable for any profit made by him through or arising out of the administration of the trust, although the profit does not result from a breach of trust.

Restatement (Second) of Trusts § 203.

The trustee is chargeable with any profit made by him through the improper disposition or use of trust property. Thus, if the trustee makes an unauthorized investment with the trust's money which results in a profit, he is accountable for the profit.

Restatement (Second) of Trusts § 205 comment h.

If the trustee in violation of his duty to the beneficiary uses trust property for his own purposes and makes a profit thereby, he is accountable for the profits so made. Thus, if he uses trust money in his business, or if he lends trust money to himself and re-lends it to others at a rate of interest higher than that which he pays to the trust's estate, he is chargeable with the profit so made.

Restatement (Second) of Trusts § 206 comment j.

Other authorities are in accord:

[I]f the trustee commits a breach of trust that results in a gain, he is accountable for the gain. The trustee will not be allowed to profit through the breach of trust, even though the profit is not made at the expense of the trust estate. Thus if the trustee in breach of trust purchases securities that are not a proper trust instrument, and these securities are sold at a profit, the beneficiaries are entitled to the profit. So also if the trustee uses trust funds in his own business, he is chargeable with any profit that he makes thereby.

Fratcher § 205, at 239; *accord* Bogert § 862, at 43.

Any benefit or profit obtained by the trustee inures to the trust estate, even though no injury was intended and none was in fact done to the trust estate.

76 Am.Jur.2d *Trusts* § 318, at 538 (1975).

The rationale for the remedy allowing recovery as profits is stated as follows:

The principal object of the administration of the rule [duty of loyalty] is preventive, to make the disobedience of the trustee to the rule so prejudicial to him that he and all other trustees will be induced to avoid disloyal transactions in the future. The remedies granted for disloyalty often include taking from the trustee property which he has acquired by the disloyal conduct, for example, property of the trust, or profits made through the self-dealing, but such relief is not primarily granted to prevent unjust enrichment of the trustee but for its deterrent effect.

Bogert § 543, at 218.

■ The plaintiffs also point to Iowa Code section 633.155 (1991) which states:

No fiduciary shall in any manner engage in self-dealing, except on order of court after notice to all interested persons, and shall derive no profit other than the fiduciary's distributive share in the estate from the sale or liquidation of any property belonging to the estate.

The defendants argue the pledge did not amount to a "sale or liquidation" of the trust property thereby rendering the statute inapplicable. This argument is without merit. When stock is pledged as collateral for a loan the pledger has constructively sold the stock and the pledgee constructively purchased it even though no foreclosure occurred. *Securities Investor Protection Corp. v. Vigman*, 803 F.2d 1513, 1518 (9th Cir.1986). The United States Supreme Court applied similar reasoning when it held a pledge is equivalent to a sale for purposes of a fraud claim under section 17(a) of the Securities Act of 1933. *Rubin v. United States*, 449 U.S. 424, 429–31, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633, 637–38 (1981). *See also United States v. Kendrick*, 692 F.2d 1262, 1265 (9th Cir.1982) (pledge of securities constitutes a sale under rule 10(b)–5), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983).

These authorities are reinforced by Iowa Code section 633.155 (1991) which prohibits fiduciaries from deriving a personal profit from the sale or liquidation of trust assets. The statute's prohibition against self-dealing is not limited to sale or liquidation of trust property. Any profits which are derived from the trust belong to the trust.

■ Iowa Code section 633.160 specifically provides that beneficiaries who suffer loss as the result of a trustee's negligence or breach of trust can recover for their loss. We reject defendants' suggestions that the statute's allowance of a right to recover for losses carries with it a denial of a right to recover the trust's share of profits derived personally by a trustee.

It was error to disallow recovery for the value and earnings of that part of the Musco stock which Crookham derived from the pledge of trust assets. The case must be remanded for assessment of damages accordingly. It will be for the jury to determine from all the evidence the extent to which the pledge of trust assets resulted in profits to Crookham.

II. It is also complained that Crookham breached the spendthrift nature of ·the trust by distributing principal to or as directed by John Coster, to the detriment of other Coster family beneficiaries. The jury

allowed plaintiff $125,405 on this claim. Plaintiffs appeal the award as inadequate. Defendants cross-appeal the allowance of anything on the claim.

■ The trustee's liability, if any, for the breach in paying over principal to or at the direction of the beneficiaries, unlike those on plaintiffs' claim of the trust's share of profits derived from trust assets discussed in division I of this opinion, are limited to the three previously mentioned in Restatement (Second) of Trusts section 205 (loss or depreciation of value—profit produced by breach—profit which, but for breach, would have resulted).

No profit to any defendant was shown as a result of the distributions made at Coster's direction. It was not shown that any profit would have resulted to the trust in the absence of the breach. Thus any recovery is limited to the loss to the trust. As mentioned, the jury found there was a loss and, although we find a jury question was made out on the issue, it is an issue that will have to be retried.

Crookham assigns the giving of a number of jury instructions over his exception as an assignment of error in his cross-appeal. We find merit in the assignment as it relates to one of the instructions and conclude that the award of compensatory damages on maladministration is flawed.

■ The court instructed the jury that a trustee is required to make an accounting to the court at least once a year. This is ordinarily a requirement for trusts administered subject to court supervision. Iowa Code § 633.700. For trusts, such as this one, created by private deed and not made subject to court supervision, there remains a strict duty to account on demand at reasonable times. *Cox v. Cox*, 357 N.W.2d 304, 306 (Iowa 1984); Restatement (Second) of Trusts § 172 comment c.

There is no requirement for an extra-judicial trustee to do so annually or in court.

■ We cannot conclude the error had no impact on the compensatory damage award of $125,405, an amount which bears no relationship to plaintiffs' evidence of loss. Of that amount the only evidence of out-of-pocket loss to the trust was $90,000 which plaintiffs assert resulted from a loan made at John Coster's request to his friend Ron Coppi who, the jury could find, needed money to face up to a check kiting scheme. Contrary to Crookham's claim, we find a jury question for maladministration was made out in the Coppi matter. According to the jury finding, only John Coster among the beneficiaries knew of the transaction. Crookham points out that a court order [2] was obtained approving the loan of trust assets to Coppi. The application for that order, however, did not state the true reason for the loan. Plaintiffs contend, and convinced the jury, that the application was a fraud on the court and a loss of trust assets.

The difference between a possible loss of $90,000 shown, and $125,405 is however considerable. We cannot conclude the error in the instruction was harmless. A new trial on the maladministration claim against Crookham will be necessary following remand. We comment briefly on other instruction challenges because they may recur on retrial. Crookham contends the instruction defining spendthrift trusts was misleading because he says a spendthrift trust is invalid where the settlor and beneficiary are the same. The rule is that property cannot be placed beyond the reach of one's creditors by such a tactic. The rule is stated:

1. Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interests.

2. This inter vivos trust was being administered without court supervision under Iowa Code chapter 633. No authority for such an order is noted or recited in the application or order, which was signed by a district court judge other than the one who presided at trial. Iowa Code § 633.10(4) authorizes invocation of district court administration upon the request of a trustee. We do not understand the application for order in the Coppi matter to be a request for district court administration. We express no views concerning the jurisdiction of a court to enter an order under these circumstances.

2. Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.

Restatement (Second) of Trusts § 156. There was no error in explaining to the jury the nature of a spendthrift trust. Contrary to Crookham's contention there was no error in the trial court instruction regarding burden of proof, which comported to our holding in *Clinton Land Co. v. M/S Associates, Inc.*, 340 N.W.2d 232, 235 (Iowa 1983).

■ III. Defendant Myron Gordin, who is not a lawyer, was associated with Crookham in the Musco investment. Plaintiffs' case against Gordin, so far as any claimed error is preserved for review, is appended to Crookham's breach. Gordin did not serve as trustee. The case against him was grounded solely on the claim that he profited from Crookham's breach.

The jury found that Crookham breached his fiduciary duty by self-dealing in issuing the guaranty. A special verdict inquired:

Did defendant Myron Gordin have notice that defendant Crookham, as trustee of the Coster trust, committed a breach of his fiduciary duty by engaging in self-dealing, and did Myron Gordin participate in or aid or assist said breach?

The jury answered no.

On appeal plaintiffs raise but one twofold assignment of error regarding their claim against Gordin. They first insist Gordin's liability for Crookham's breach was established as a matter of law and should not have been submitted for jury consideration. Plaintiffs' second contention under the assignment challenges the trial court's refusal to give their requested instruction which would have informed the jury that one dealing with a trust is obligated to investigate its terms and conditions, and is bound by them.

Both contentions under this assignment of error are grounded on a sound legal theory which plaintiffs quote, and for which they do not qualify. It is the Re-statement (Second) of Trusts section 326, which states:

A third person who, although not a transferee of trust property, *has notice* that the trustee is committing a breach of trust and participated therein is liable to the beneficiary for any loss caused by the breach of trust.

(Emphasis added.)

An element of the foregoing recovery is notice of the breach. Plaintiffs' requested instruction would supplant the notice requirement by holding it exists as a matter of law for anyone dealing with the trust. We reject such a view. Gordin's liability was not established as a matter of law and the requested instruction was properly refused.

We find no error in the assignment and hence affirm dismissal of all claims against Gordin.

■ IV. The plaintiffs' suit against FNB does not present a close question. Plaintiffs assert that FNB had knowledge of Crookham's breach of trust and, as lender to Musco, should be liable to plaintiffs. Plaintiffs' claim against FNB is also based on Restatement (Second) of Trusts section 326, just quoted.

By special verdicts the jury found FNB did have notice of Crookham's breach, and did "participate in or aid or assist" the breach. Although there is at most scant evidence of any participation or assistance by FNB, we pass the finding because FNB did not cross-appeal these verdicts.

The jury also found that no loss resulted to plaintiffs as a result, and the evidence amply supports this finding, a finding which is dispositive of the case against FNB. There is no suggestion that FNB in any way benefited from the purchase of the Musco stock.

The dismissal of plaintiffs' claims against FNB is affirmed.

■ V. Plaintiffs' claims of self-dealing on the part of Iowa Trust are independent from the self-dealing they allege against Crookham. Plaintiffs claim Iowa Trust engaged in self-dealing by serving

simultaneously as trustee and lender. Iowa Trust denies it acted as trustee and insists it did not consider itself to be one. As mentioned, the jury found Iowa Trust did indeed serve as trustee. This finding is in accordance with a written contract dated and signed October 11, 1985, by and between Iowa Trust, the Costers, and Crookham. Additional evidence showed that Iowa Trust performed duties normally expected of a trustee. Iowa Trust's argument that it should not be held to answer as trustee because it essentially performed only bookkeeping duties is without merit.

Iowa Trust's suggestion that it somehow lessens its fiduciary responsibility because it was not appointed by a court is also obviously without merit. *NFO Members' v. Beneficiaries*, 255 N.W.2d 162, 164 (Iowa 1977) (trust exists when legal and equitable title separated with obligations to equitable titleholder).

■ Plaintiffs contend that loans made to the trust by Iowa Trust while serving as trustee are unenforceable. The trial court ruled that the loans are enforceable, but that Iowa Code section 633.155 [3] precluded Iowa Trust from obtaining any profit by charging interest. The Costers appeal that portion of the trial court's ruling enforcing the loans; Iowa Trust cross-appeals the prohibition from charging interest.

A sensitivity to conflicts of interest throughout our society has grown remarkably over recent years. Iowa Code section 633.155 is but one example. Whatever past traditions may have been, banks which serve as fiduciaries can no longer, without authorization, lend money to an entity for which they serve as trustee. Authorization for such a loan can be expressly provided in the trust instrument itself. For trusts which lack such authorization and are subject to court supervision, permission for self-dealing, if appropriate, can be obtained pursuant to Iowa Code section 633.155. Lacking authority, either in the trust in-

strument or given by the court pursuant to Iowa Code section 633.155, such a loan should not be made. Where, as here, such an unauthorized loan is made, no profit can be realized from it.

■ We note parenthetically that, although in certain situations it would be inappropriate, no present statute or rule prohibits depositing—or requiring court permission for a bank to deposit—trust funds within a bank serving as trustee. *See* Iowa Code §§ 633.156, 633.127; *see also* 76 Am.Jur.2d *Trusts* § 373, at 586 (1975). Such a deposit would clearly become inappropriate whenever the deposit deprives the trust of those earnings which would result from prudent investment practice.

We think the trial court's resolution, upholding validity of the loan while barring recovery of any interest, was correct. The holding is affirmed.

VI. The jury allowed punitive damages against Crookham in the amount of $666,850. It allowed punitive damages against Iowa Trust in the amount of $170,979. No other claims for punitive damages were submitted to the jury. The trial court ordered a new trial on the punitive award against Crookham and set aside the punitive award against Iowa Trust. We think both rulings were correct.

■ Punitive, sometimes called exemplary, damages are well understood and serve a vital function in our tort system. They are not awarded as a matter of right, but only as a form of punishment and to deter others from conduct which is sufficiently egregious to call for the remedy. *Northrup v. Miles Holmes, Inc.*, 204 N.W.2d 850, 861 (Iowa 1973).

A careful reading of our cases on the subject, especially those filed during the past decade, discloses that demands for punitive damages far exceed the number of cases where they are appropriate. Their assessment has always called for utmost

---

**3.** Iowa Code § 633.155 provides in material part:

> No fiduciary shall in any manner engage in self-dealing, except on order of court after notice to all interested persons, and shall de-

> rive no profit other than the fiduciary's distributive share in the estate from the sale or liquidation of any property belonging to the estate. . . .

discrimination because, by their very nature, they involve utilization of a rightful indignation which must not amount to passion or prejudice.

We have observed the extravagant proliferation of punitive damage claims with concern, and have repeatedly pointed out that such damages cannot arise from conduct which is merely objectionable. *See, e.g., Parks v. City of Marshalltown,* 440 N.W.2d 377, 379 (Iowa 1989) (appropriate only when a party acts with actual or legal malice); *Berryhill v. Hatt,* 428 N.W.2d 647, 656 (Iowa 1988) (belligerent conduct insufficient). We perceive that our concern was shared by the General Assembly in 1988 when it enacted present Iowa Code section 668A.1 (jury, before allowing punitive damages, required to specifically find "by a preponderance of clear, convincing and satisfactory evidence, the conduct ... constituted willful and wanton disregard for the rights or safety of another").

■ Although plaintiffs contend otherwise, Crookham's conduct in the maladministration claim did not call for punitive damages. The only conduct established on this claim by the evidence was the loan of trust assets to Ron Coppi. Crookham's conduct in this regard, yielding to John Coster's entreaties to make the loan, did not amount to actual or legal malice.

■ It was appropriate for the trial court to submit plaintiffs' punitive damage claim against Crookham on their claim that Crookham engaged in self-dealing. The guaranty of trust assets for personal gain was sufficiently egregious to qualify for punitive damages under the authorities we have cited. The punitive damage award against Crookham may in part have been awarded on the basis of the maladministration claim. We have determined any such award would be inappropriate. Therefore the punitive damage claim against Crookham for self-dealing will have to be retried on remand.

The trial court set aside the punitive damage award against Iowa Trust and ordered it dismissed. We uphold the dismissal because the conduct of Iowa Trust in making the loan was not sufficiently egre-gious to form the basis of a punitive damage claim.

VII. In summary, all plaintiffs' claims against defendants Gordin and FNB were properly dismissed. Defendant Crookham's liability to plaintiffs arising from the guaranty of trust assets is established by the jury's special verdict. The amount of Crookham's liability on that claim, both as to actual and punitive damages, must be determined upon retrial on remand. Of course we do not direct that punitive damages against Crookham be awarded; such damages are allowed, if at all, only as a matter of grace. *Rowen v. Le Mars Mut. Ins. Co.,* 282 N.W.2d 639, 661 (Iowa 1979). Defendant Crookham's liability to plaintiffs for maladministration of the trust will have to be retried on remand. No punitive damages are to be allowed on that claim. Iowa Trust's liability to the trust for all interest collected on any loans made to the trust is affirmed. The amount of that recovery must be fixed on remand. No punitive damages may be awarded against Iowa Trust. Costs on appeal are taxed sixty percent to Crookham, twenty percent to Iowa Trust and twenty percent to plaintiffs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.