The Bank of the Old Dominion v. The Dubuque & Pacific Railroad Co.

---

THE BANK OF THE OLD DOMINION *v.* THE DUBUQUE & PACIFIC RAILROAD COMPANY.

Where a trustee, acting for others, sells an estate, and becomes interested in the purchase, the *cestui que trust* is entitled, in a court of equity, to set aside the purchase, and have the property re-exposed to sale.

Whether the *cestui que trust* be an infant or an adult, and whether the sale be public or private, the trustee is equally disabled from becoming a purchaser of the trust estate.

In such a case, in order to set aside the sale, the *cestui que trust* is not bound to prove, nor the court to judge, that the trustee has made a bargain advantageous to himself.

It is to guard against the uncertainty of the *cestui que trust* being able to prove fraud in the sale, and the hazard of abuse, as well as to remove

the trustee from temptation, that the rule permits the *cestui que trust* to come, at his own option, and without showing actual injury, insist upon having the experiment of another sale.

The plaintiff loaned to the defendant, $20,000, for which it gave its obligations, in the shape of acceptances, payable at its office in the city of New York, in ninety and one hundred and twenty days, and to secure the payment of the same at maturity, according to agreement, forwarded to the plaintiff thirty-four "Land Grant Construction Bonds," of said defendant, of one thousand dollars each, to be held by the plaintiff as collateral security for the payment of the money loaned. The acceptances were not paid at maturity, but were protested for non-payment, and remain wholly unpaid. The plaintiff sent the bonds of the defendant to the city of New York, with directions to have them sold at the stock exchange in said city, at public outcry, to the highest bidder, and directed a friend to see that the interests of the plaintiff were protected in the sale. Upon due notice to the defendant, the bonds were sold·as directed, and the whole of them bid in for the plaintiff at the sum of $5,477 86. In an action on the acceptances, to recover the balance due, after deducting the amount realized by the sale of the bonds; *Held*, 1. That the plaintiff had power to sell the bonds for the payment of the debt, and that a sale to a third person would have passed the property ; 2. That the plaintiff itself could not become the purchaser, and nothing passed by the form of a sale at auction in which the bonds were bid in by the plaintiff; 3. That the bonds must be considered as still held by the plaintiff, under its original title, as collateral security for the payment of the money borrowed by the defendant.

*Appeal from the Dubuque District Court.*

TUESDAY, APRIL 12.

THE Bank of the Old Dominion loaned to the Dubuque & Pacific Railroad Company, twenty thousand dollars, for which the company gave its obligations, in the shape of acceptances, payable at the office of the company in the city of New York, in ninety and one hundred and twenty days. To secure the payment of the same, at maturity, the railroad company, according to agreement, forwarded to the bank thirty-four "land grant construction bonds" of said company, of one thousand dollars each, to be held by the bank as collateral security for the payment of the money loaned.

The acceptances were not paid at maturity, but were protested for non-payment, and still remain wholly unpaid. The bank sent the bonds of the railroad company to the city of New York, with directions to have them sold at the stock exchange in said city, at public outcry, to the highest bidder, and with directions to a friend, to see that the interests of the bank were protected in the sale. Upon due notice to the railroad company, the bonds were sold as directed, and the whole of them were bid in for the bank, at the sum of $5,477 86.

This suit is brought by the bank, to recover of the railroad company, the balance due on the said acceptances, dededucting the amount realized by the sale of the bonds. Upon this agreed statement of facts, the district court was called upon to decide as to the validity of the sale of the bonds, and, according as it might be of opinion, to render judgment for the whole amount due on said acceptances, or for such sum as might be due thereon, deducting the sum realized by the plaintiff from the sale of the bonds. The district court was of opinion, that the sale of the bonds was valid, and vested the title thereto in the bank, and rendered judgment accordingly for the plaintiff, for $16,818 00, from which the defendant appeals.

*Platt Smith*, for the appellant, cited *Middlesex Bank* v. *Minott*, 4 Metc., 329; 1 Pars. on Cont., 601; 1 Story's Eq., secs. 308, 322; *Wilson* v. *Little*, 2 Comst., 443.

*Samuels, Allison & Crane*, for the appellee. [The reporter found no brief of the counsel for appellee, upon the files.]

STOCKTON, J.—For the railroad company, it is contended that the purchase of the bonds by the bank, was illegal and unauthorized, and that the title did not pass by the sale, but remains in the railroad company, subject to the original agreement between the parties. For the bank, it is contended

that the title of the bonds became absolute in the bank by the purchase.

There can be no doubt of the power and authority of the plaintiff to sell the bonds of the railroad company, for the payment of the debt; and a sale to a third person, would have passed the property. But, as was held in the case of the *Middlesex Bank* v. *Minott*, 4 Metc., 325, the bank could not itself become the purchaser; and nothing passed by the form of a sale at auction, in which the bonds were bid in by the plaintiff. They must be considered as still held by the bank, under its original title, as collateral security for the money borrowed by the railroad company.

The relations existing between the trustee and *cestui que trust*, and, as resulting therefrom, the principles establishing the rights of the parties in this case, have been very fully examined by CHANCELLOR KENT, in *Davone* v. *Fanning*, 2 Johns. Ch., 258, in which it is held, that if a trustee, acting for others, sells an estate, and becomes himself the purchaser, the *cestui que trust* is entitled, in a court of equity, to set aside the purchase, and have the property re-exposed to sale. And whether the *cestui que trust* be an infant or an adult, and whether the sale be public or private, the trustee is equally disabled from becoming a purchaser of the trust estate. However innocent, says the Chancellor, the purchaser may be in the given case, it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and the party not have it in his power to show it. There may be fraud, and the party not able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does, and will, permit the *cestui que trust* to come, at his own option, and without showing actual injury, insist upon having the experiment of another sale. 1 Story's Eq., sec. 322; Story on Bailments, sec. 319 ; 1 Pars. on Cont., 602.

The judgment of the district court will be reversed, and the cause remanded, with directions to enter judgment for the amount due the plaintiff on the acceptances; and the farther judgment that the plaintiff holds the bonds of the railroad company, under the original agreement of the parties, as collateral security for the payment of the amount borrowed by the company—the purchase of the said bonds by the plaintiff being held invalid.

Judgment reversed.