Loie M. Linsley, Estella Wray and J. W. Linsley, Guardian of Laura Funk and Clarence Strang, v. Ward B. Strang and Ward B. Strang, Trustee.

**Trusts:** duty of trustee. A trustee is required to act in perfectly
1   good faith in administering the trust, and he can not manage the trust property or deal with it so as to gain any advantage for himself.

**Same:** purchase of trust estate by trustee. Where a trustee be-
2   comes a purchaser of the trust property at his own sale the *cestui*

*que* trust may have the sale set aside; the only exception to this rule being where it is conclusively shown that the beneficiary, competent to act for himself, had full knowledge of all the facts concerning the property and the transaction and the person with whom he was dealing and freely consented thereto and the price was fair and adequate.

**Same.** One to whom property has been devised in trust can not purchase the same at a referee's sale in partition even though the decree ordering the sale provides that he shall have a preference right to purchase, since his interest as a purchaser becomes antagonistic to those of the beneficiary; and the court can not destroy the rule prohibiting a trustee from purchasing the property at his own sale by preliminary order of that character.

**Same:** CANCELLATION OF SALE: DIRECT ATTACK. A suit by a beneficiary to set aside a sale of trust property as trustee under a decree in partition proceedings, notice of which was not served upon the beneficiary, nor was there any appearance for him to the action, is a direct attack on the partition proceedings and the sale thereunder.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

SATURDAY, DECEMBER 17, 1910.

SUIT in equity to set aside a partition sale of real estate and for an accounting. There was a judgment for the defendant. The plaintiffs appeal.—*Reversed* and *remanded.*

*Ranck & Bradley* and *P. W. Tourtellot,* for appellants.

*John J. Ney* and *W. J. McDonald,* for appellee.

SHERWIN, J.—The plaintiffs Loie M. Linsley and Estella Wray are daughters of Laura Funk Stover, who is the ward of J. W. Linsley, guardian. Clarence Strang, the other ward of said guardian, and Laura Funk Stover are brother and sister and children of James B. Strang, deceased. The defendant, Ward B. Strang, is a brother

of Clarence Strang and Mrs. Stover. James B. Strang died in June, 1904, leaving a will which was duly admitted to probate in Johnson County. This will devised to the defendant in trust for the surviving children of Laura Funk Stover an undivided one-fifth of three hundred and ninety-two and twenty-two-hundredths acres of land. Another undivided one-fifth of the same land was devised to the defendant in trust for the children of Laura Funk Stover and certain other heirs and legatees, the children of Laura Funk Stover being given a one-eighth interest therein. The income from the two-fifths so devised was to be used as necessary for the support of Laura Funk Stover and Clarence Strang, both of whom were of unsound mind at the time of their father's death and have so continued. The defendant accepted the trust created by the will, and he was also appointed one of the executors thereof and served as such executor until December, 1906. After he had assumed the duties of trustee and executor, and on the 11th day of October, 1904, he commenced an action as trustee for the partition of the land in controversy joining as parties defendant all legatees who were interested in the land. The plaintiffs Loie M. Linsley and Estella Wray had reached their majority at that time and were served with notice of the partition suit, but they had not been consulted about its commencement. In the latter part of February, 1906, a decree was entered in the case ordering that the land be sold at either public or private sale by the referee, Mr. Isaac Myers. The decree also contained this provision: "It is further ordered that, if said premises be sold at private sale, the said referee shall give to Ward B. Strang in his own right . . . preference over strangers to the estate." On the 8th of October of the same year the referee reported that he had sold the land to the defendant Ward B. Strang at private sale for $2,900 or $58 per acre. This report was approved. On the next day the referee executed a deed to Strang which was on

the same day approved. The plaintiffs ask that the deed to Strang be canceled and set aside, and that he be required to account for the rents and profits of their interests in the land. No notice of any of the proceedings subsequent to the commencement of the partition suit were served upon any of the plaintiffs, and the record shows that they did not know that the defendant was a prospective purchaser of the land until after he had received the deed therefor and the same had been approved.

The undisputed evidence shows that at the time the land was sold to Strang it was worth from $75 to $100 per acre. The improvements thereon were exceptionally good, and we think it fair to say that the farm as a whole was then worth at least $80 per acre. The defendant sold a farm of one hundred and ninety-one acres adjoining it, only a few days before he received the referee's deed, for about $75 per acre to a man who went to him for the purpose of buying the larger farm, and there is no question but what the farm in controversy could then have been sold to the defendant's grantee for at least $75 per acre. The defendant offered no evidence, and, except as disclosed by a newspaper notice which we shall again refer to, the record is barren of information as to the efforts of the referee and the defendant to find a purchaser for the land in controversy. It does not appear that any offers were made therefor except those made by the defendant. It does appear, however, that at least two persons were ready to make offers before the referee's sale, but were deterred from doing so by the statement that the defendant had already bought the place. On July 6, 1906, the defendant wrote the referee as follows: "Mr. Isaac Myers, Referee, North Liberty, Iowa. Dear Mr. Myers: Yours of yesterday at hand. In reply will say, as trustee, I would not undertake to place a valuation on the farm. Individually I might say that it was not worth more than $40 per A. However, in my capacity as trustee I shall

look to you for a square and honest sale of the farm. At present I have no one I can rely on, but am working hard to find a buyer. Yours very truly, Ward B. Strang, Trustee." On the 14th of August, 1906, the defendant made the referee a written offer of $60 an acre and on the 29th day of September he made a written offer of $58 per acre. There is nothing in the record showing a formal withdrawal of the first offer. Nor is it disclosed why the second offer was accepted instead of the first. Without giving the evidence more in detail, we say that the record is full of facts showing that the defendant acted throughout the entire transaction wholly for himself and apparently without a thought of the trust that he had accepted. Indeed, his position and argument before us on this appeal is that he stood in the relation of one owing no duty because of his fiduciary capacity, and that he had the right to purchase the property for one-half its value, if he could do so. That he is greatly mistaken we shall now demonstrate.

It is a general principle that a trustee must act with the most scrupulous good faith. The one great duty arising from this fiduciary relation is to act in all matters relating

1. TRUSTS: duty of trustee.

to the trust wholly for the benefit of the beneficiary. A trustee will not be permitted to manage the affairs of his trust, or to deal with the trust property so as to gain any advantage, either directly or indirectly, for himself. These principles require no citation of authority in their support. The common sense of honesty dictates such rules. As applied to the sale of trust property, the decisions, not only of this court, but of practically all courts speak with no uncertain sound.

In the early case of the *Bank of Old Dominion v. D. & P. Ry. Co.*, 8 Iowa, 277, it was held that, if a trustee

2. SAME: purchase of trust estate by trustee.

became the purchaser at his own sale, a court of equity would set the sale aside. The rule was reannounced in *Sypher v. McHenry*, 18 Iowa, 232, in the following concise and vigor-

ous language: "If the trustee becomes interested in the pur-
chase, the *cestui que* trust is entitled, as of course, to have
the sale set aside. *Davoue v. Fanning,* 2 Johns. Ch. (N.
Y.) 252; *Bank of Old Dominion v. D. & P. Ry. Co.,*
8 Iowa, 277. A trustee can not act for his own benefit in
a matter connected with the trust. *Holt v. Holt,* 1 Ch.
Cas. 190. When a trustee undertakes to act for others, he
undertakes hot to manage for his own benefit. *Ex parte
Laney,* 5 Vesey, 625. It is not permitted that the agent
shall buy for himself or for another. To allow this, would
permit him to apply the information acquired by the trust
to his own benefit. *Ex parte Bennett,* 10 Vesey, 385. The
principle referred to is admitted, not only as established by
adjudication, but also as founded in indispensable neces-
sity, to prevent that great inlet of fraud, and those dangerous
consequences which would ensue, if trustees might them-
selves become purchasers, or if they were not in every re-
spect kept within compass. Although it may seem hard
that the trustee should be the only person of all mankind
who may not purchase, yet, for very obvious consequences,
it is proper the rule should be strictly pursued and not in
the least relaxed. *Munro v. Allaire,* 2 Caines Cas. (N.
Y.) 183 (2 Am. Dec. 330). The danger of temptation
does, out of the mere necessity of the case, work a disquali-
fication. Nothing less than incapacity being able to shut
the door against temptation, when the danger is imminent,
and the security against discovery great, the wise policy
of the law has, therefore, put the sting of disability in the
temptation as a defensive weapon against the strength of
the danger which lies in the situation. The parts which
the buyer and the seller have to act, stand in direct op-
position to each other in point of interest, and the conflict
of interest is the rock, for shunning which the disability
has obtained its force, by making that person who has one
part intrusted to him incapable of acting on the other side.
*The New York Building Company v. Mackenzie,* decided

in 1795, 8 Bro. C. P.   Trustees of every description, who
have power to sell, can never by direct or indirect means,
become the purchaser of the trust property.   *Litchfield v.
Cudworth,* 15 Pick. (Mass.) 24; *Copeland v. Mercantile
Insurance Company,* 6 Pick. (Mass.) 198.   A trustee is
bound not to do anything which can place him in a posi-
tion inconsistent with the interest of the trust, or which
has a tendency to interfere with his duty in discharging it."
And the rule has ever since been followed by this court.
See *Booth v. Bradford,* 114 Iowa, 572; 2 Pomeroy's Equi-
ty, sections 958-1075.   The only exception to this rule that
has been recognized by any of the courts is to be found
in cases where the trustee can show, "by unimpeachable
and convincing evidence, that the beneficiary, being *sui
juris,* had full information and complete understanding of
all the facts concerning the property and the transaction
itself, and the person with whom he was dealing, and gave
a perfectly free consent, and that the price was fair and
adequate, and that he made to the beneficiary a perfectly
honest and complete disclosure of all knowledge possessed
by himself, or which he might, with reasonable diligence,
have possessed and that he has obtained no undue or in-
equitable advantage."   2 Pomeroy's Equity, section 598.
Nearly every element necessary in the exception noted is
absent from the instant case, and, if we were disposed
to relax the rule of the early cases, there would be no
warrant for doing so here.

The appellee's chief reliance for an affirmance is based
on the permission given in the partition decree and upon
the approval of the sale and deed, and, further upon the
fact that it was a referee's sale, and not a
3. SAME.      direct sale by him.   Discussing these propo-
sitions in their reverse order, we are of the opinion that
it makes no difference with the rule whether the sale be
made by the trustee himself or by a person specially ap-
pointed for that purpose.   The reason for the rule is to

prevent conflicting interests between the trustee and the beneficiary, and such conflict may arise as well from a sale made by another as from a sale made by himself. For instance, the trust relation demands the exercise of care for the interests of the beneficiary. A referee or other officer might make such a sale as would seriously affect the interests of the beneficiary, and if the trustee were permitted to become the purchaser, his interests would at once become antagonistic to the interests of the beneficiary. See *Staats v. Bergen,* 17 N. J. Eq. 297, and cases cited therein; *Marshall v. Carson,* 38 N. J. Eq. 250 (48 Am. Rep. 319); *Fulton v. Whitney,* 66 N. Y. 548. And such is the holding in effect in *Walker v. Walker,* 127 Iowa, 77; *Sypher v. McHenry, supra,* and *Read v. Howe,* 39 Iowa, 553. This rule is binding upon district courts, and its force and effect can not be destroyed by a preliminary order granting the trustee permission to become a purchaser, nor by approving a sale to him. Whatever order is made by the trial court must conform to the law, otherwise it affords no protection. *Walker v. Walker, supra.* It should be said in this connection that the judge who signed the decree in the partition case did so without any examination thereof and as a matter of course.

The evidence wholly fails to show that any of these plaintiffs were represented by counsel in any of the partition proceedings. There is nothing in the appellee's contention that this is a collateral attack. It is a direct attack upon the partition proceedings and upon the sale made thereunder. *Fleming v. Hutchinson,* 36 Iowa, 519; *Lyon v. Vanatta,* 35 Iowa, 521.

4. SAME: cancellation of sale: direct attack.

The defendant will account to the plaintiffs for rents and profits as shown by the evidence in this case, the computation to be made by the trial court.

The judgment is reversed, and the case remanded for

further proceedings not inconsistent with this opinion.—
*Reversed* and *remanded.*

## ON PETITION FOR REHEARING—OVERRULED.

SHERWIN, J.—Both parties ask that the opinion be
made more specific in certain particulars, and that direc-
tions be given as to future proceedings in the case. It
was not the intention of the original opinion to set aside
the judgment and order of partition. It was the sale under
such judgment and the order approving the same that were
set aside. In view of the present situation, we think that
a new referee and new appraisers should be appointed, and
that the entire tract of land should be reappraised and
sold, after such timely notice as the district court shall
order. The sale may be either public or private. The
defendant shall not be a purchaser at such sale so long
as he remains the trustee of said estate, unless the plaintiffs
consent thereto; but with their written consent he may be-
come such purchaser. The costs of the former appraise-
ment and sale will be taxed to the defendant individually.

Since the decision herein was handed down, the de-
fendant has filed a motion to dismiss the appeal on the
ground that certain persons not parties to the action were
not served with notice of appeal. It is true that the plain-
tiffs at one time asked leave to bring in new parties; but
the defendant resisted, and the trial court sustained such
resistance. The persons named never became parties to
the action or judgment, and hence were not coparties, upon
whom notice of appeal must be served. The motion to
dismiss the appeal is therefore denied.

The petition for a rehearing is *overruled.*