## STONE v GUARDIAN TRUST CO et

Municipal Court of Cleveland

Louis J. Kane, Cleveland, and Halle, Haber & Berick, Cleveland, for plaintiff.

John W. Bricker, Atty. Gen., Columbus, Charles F. Carr, Cleveland, and F. K. Pickering, Cleveland, for defendant.

## OPINION

By DRUCKER, J.

Plaintiff sues in replevin to recover possession of four insurance policies. Defendant admits that it has possession of three of the policies but denies possession of the fourth and it claims the right to retain the three in its possession on several grounds which I shall hereafter discuss.

The material facts necessary to a decision are these. On April 29, 1930, plaintiff and the defendant The Guardian Trust Company entered into a life insurance trust agreement by the terms of which plaintiff delivered to the defendant the insurance policies in dispute, with instructions how the income and principal thereof should be distributed after the decease of the creator of the trust. One of the clauses instructed the trustee to use whatever portion of the trust estate might be necessary for the purpose of paying off any indebtedness which might exist against certain real estate. At the time of the execution of this agreement an indebtedness of $15,000.00 in favor of The Guardian Trust existed against said real estate and was evidenced by a note in the sum of $15,000.00 dated December 17, 1926.

By the terms of the trust agreement plaintiff, the creator of the trust, expressly reserved the right to revoke the trust at will without the consent or approval of the trustee, the right to withdraw from the operation of the agreement any or all of the policies, the right to change beneficiaries, their shares and plan of distribution, and the right to sell the policies, pledge them, borrow money on them "by my own act alone and without the consent or approval of the trustee."

After this trust agreement was executed and the policies delivered to the Trust Company, plaintiff became indebted to the Trust Company on three additional notes in the successive sums of $2800.00, $3400.00 and $8130.00. After the first two notes and the trust agreement were executed but before the last two notes were executed and delivered, plaintiff was adjudicated a bankrupt and received his discharge from personal liability on the first two notes.

In its first answer to plaintiff's affidavit in replevin, the defendant did not ask for judgment on the first two notes but asserted certain lien rights against the policies and alleged that the bankruptcy proceedings in no way affect such lien rights.

To this answer the plaintiff filed a reply in which he denied the lien rights of the defendant, alleged that on August 17, 1931 he was discharged in bankruptcy from his obligation upon the notes to The Guardian Trust Company and further alleged that he had exercised his right of revocation contained in the insurance trust agreement.

Thereupon the defendant took judgment on the two notes that had not been discharged in bankruptcy and filed affidavits in aid of execution and had orders in aid

served upon itself and upon The Equitable Life Assurance Society, the latter being the company which had issued the policy that defendant denied having in its possession. Following this, the defendant filed a supplemental answer asserting the additional right to retain the policies because of the lien created by the aid proceedings. To this supplemental answer plaintiff filed a reply denying that the defendant acquired a lien by the aid proceedings and further alleging that subsequent to his notice of revocation of the insurance trust agreement he had also notified the insurance companies that he desired a change of the beneficiaries under the policies.

The evidence of the plaintiff does not establish that the defendant is in possession of the Equitable Life Assurance policy. The defendant admits that it is in possession of the other three policies and also admits that plaintiff is the owner of the policies. Therefore the defendant must establish a justification for its retaining possession of the policies against the owner. The following paragraph of the defendant's brief well summarizes the contentions of the defendant.

"Defendant had a lien under the trust agreement and modification of trust agreement upon the policies in the trust for the unpaid balance on the $15,000.00 notes. Bankruptcy of plaintiff did not affect defendant's rights as to the policies. Defendant may assert liens given the bank under trust agreements with the bank as trustee, and the intent to give a lien is good in equity. Plaintiff is barred in equity by §8617, GC from revoking defendant's lien, otherwise the revocation is good. Also, defendant has the right to set off the unpaid balances on the notes against the policies in the trust and has a lien upon the policies by reason of the aid of execution proceedings on the two notes executed after bankruptcy."

Initially, it will be well to eliminate some erroneous conceptions from the consideration of the case. First: Discussion of set-off is not pertinent to the issue. While plaintiff is indebted to the defendant, no indebtedness of defendant to plaintiff or to any other person is in issue. While defendant's judgment against plaintiff satisfies the technical definition of a set-off as given in §11319, GC, it would ▇▇▇▇▇▇▇ serve no useful purpose to ask this court to render a judgment upon a judgment in this action. Disre-

garding questions of jurisdictional amount the utmost that defendant could ask for on the basis of the statutory set-off would be another judgment against plaintiff for the amount of the existing judgment. Such a judgment would not affect plaintiff's right to a judgment directing the return of the policies if plaintiff otherwise shows himself entitled to their return. Defendant would not be benefited by the rendition of a new judgment upon his asserted set-off claim; there is no way in which the amount of a money judgment can be subtracted from a replevin judgment covering the return of specific chattels. Without finding it necessary to pass upon the matter, we note in addition that it is seriously to be questioned whether in any event a set-off as defined by the statute could be asserted in this action. The fact that some replevin actions are founded on contract (**Fairmount Creamery Co. v Ewing, 43 Oh Ap 191**) does not conclusively settle that ▇▇▇▇▇▇ this replevin action based on an asserted right of property in the policies is founded on contract and thus make proper a cross-claim by way of the statutory set-off.

Second: If it is material to the decision, it should be noted that a discharge in bankruptcy, unlike the running of the statute of limitations, operates in legal theory as ▇▇▇▇▇▇ an absolute extinguishment of provable debts and not merely as an inhibition upon the bringing of an action. That a new promise to pay the discharged debt may be enforced although no consideration be given for it is a matter of the law of contracts and no part of bankruptcy principles. But if The Guardian Trust Company had a lien on the policies in dispute the enforcement of that lien would not be precluded by the absolute discharge of the debt which it was given to secure. Bankruptcy Act, §107.

We consider first the question of whether the original trust agreement created a lien upon the policies.

The express lien asserted by the defendant must be found either in the terms of the insurance trust agreement or by a statement contained in one of the financial statements furnished by the plaintiff to the defendant that the policies had been assigned to secure defendant.

Defendant relies upon a provision of the trust agreement providing as follows:

"The trustee shall use whatever portion of the trust estate may be necessary for

the purpose of paying off any and all indebtedness which may exist against the real estate located at 1392 West 83rd Street, Cleveland, Ohio, with the exception of that portion of such indebtedness as may be secured by first mortgage on said property."

Assuming that the indebtedness referred to includes the $15,000.00 note discussed herein, it is plain that this provision could not of itself justify the application of insurance proceeds to the payment of any of the other three notes with which this case is concerned. All the latter notes were executed subsequent to the execution of the trust agreement and it does not appear that any of them were secured by incumbrances upon the named real estate. Hence the trust agreement has no relation to the last three notes.

Did the trust agreement then create a lien upon the policies in favor of the Guardian Trust Company as a creditor to secure the $15,000.00 note? If such was the intention of The Guardian Trust Company, it adopted a most inartificial mode of effectuating its purpose. The provisions of the agreement read as if it were intended to establish the very legal relation that the title of the document (Trust Agreement) indicates, namely, a trust. The above recited clause does not speak in terms of pledge or chattel mortgage or even of assignment by way of security. We note that the policies of the Northwestern National Life Insurance Company ($10,000) and of the New York Life Insurance Company ($10,000), defendant's exhibits 4 and 6 respectively, each bear notations of the insurer's consent to change of beneficiary, in which the Guardian Trust Company as trustee is approved as new beneficiary. Consequently we cannot consider that the Guardian Trust Company as a banking creditor of the settlor acquired any more interest in the subject matter of the trust than would any other creditor who might be named as a beneficiary of the trust. The right of such other creditor would be the simply equitable right of any trust beneficiary that the trustee should administer the trust according to its terms. We cannot give our approval to defendant's contention that the execution of the trust agreement created a lien upon the policies. If some kind of security was intended to be created it was of a type which does not fall within any of the known categories of lien.

The modification of the trust agreement under date of August 6, 1934, adds nothing to the situation other than to make definite that the Guardian Trust Company is a creditor beneficiary of the trust and to exclude the possibility that there might be some other creditor holding an indebtedness against the designated real estate (other than the first mortgagee) who might claim to be a beneficiary of the trust.

If we should consider that it was intended that the Guardian Trust Company should have some kind of interest in the policies in the nature of a pledge by reason of the recited clause of the trust agreement, or if we should hold that the trust company as a creditor acquired a vested interest in the policies, such a conclusion would not give it an indefeasible lien upon the policies. Whatever interest the trust company as a creditor might take under the trust instrument necessarily would be limited and defined by the terms of the trust agreement which created the interest. The settlor reserved unto himself the power to sell, assign or hypothecate the policies or to borrow upon them the full loanable amount, all without the consent of the trustee; additionally the settlor was privileged to withdraw any policy and even to revoke the agreement in its entirety without the consent of the trustee and "by my own act alone." The necessary conclusion is that whatever interest the Guardian Trust Company or any other person had as a result of the execution of this agreement was an interest that was subject to being divested. A vested interest subject to being divested upon the happening of a contingency is no anomaly in the law of property. Consequently if The Guardian Trust Company ever had a vested interest in these policies by virtue of the execution of the trust instrument such interest has necessarily been divested by the happening of one of the named contingencies-revocation of the trust, all strictly in accord with the express terms of the agreement.

If we were able to view the trust instrument as a contract for the benefit of a third party as defendant seems to contend for at one point in his brief (a matter upon which we do not pass), defendant's position would not be aided by such an approach. For the rights of a third party beneficiary of a contract are circumscribed by the conditions of the contract itself. The rule is thus formulated in §140. of the Restatement of the Law of Contracts (American Law Institute 1933):

"There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and probisee; and if a contract is conditional, voidable or unenforceable at the time of its formation * * * the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation."

Defendant's claim of an equitable lien upon the policies to secure the $15,000.00 indebtedness is unsustained. Little argument is advanced in support of this claim; what slight authority is cited explodes the position it was intended to buttress. A quotation from **25 Ohio Jurisprudence, Liens, No. 16, p. 361,** includes this sentence: "If a lien has been attempted to be secured, and the method has failed, equity may enforce the agreement so agreed upon, but it would not make a new and different contract for the parties." Assuming that this quotation is appropriate to the present discussion, we note that the initial condition of the quotation has not been satisfied. We cannot find as a fact that any particular kind of lien upon the policies was intended and attempted to be given by the insured, plaintiff herein. And if some kind of security were "attempted to be secured" it necessarily would be that kind which would be afforded by making the creditor a trust beneficiary, for that is obviously all that the parties contemplated in this case. Furthermore the position of defendant is defeated by his own quotation to the effect that while equity will enforce the agreement for security "so agreed upon" it will "not make a new and different contract for the parties." On this phase of the case defendant's position is not aided by the possibility that the creditor, The Guardian Trust ▬▬▬▬▬▬▬ Company, may have misconceived the legal effect of the agreement which was made. A mistake of law in this respect will not avail it or its successor to substitute in place of the "contract" as made a contract whose legal effect would be totally different.

Defendant had no lien upon the policies to secure either the $15,000.00 note or the one for $2800.00. As the liability upon each of those notes was discharged in the bankruptcy proceedings, defendant cannot now subject any of plaintiff's property to their payment.

As to the notes executed by the plaintiff subsequent to his discharge in bankruptcy:

Defendant contends that a lien upon the policies was created by the proceedings in aid which were brought after judgment had been rendered on the notes for $3400.00 and $8130.00. The initial question to be disposed of is whether or not there was anything to be reached by proceedings in aid. The rights of a judgment creditor in this respect are set out in §§10436-10443, GC, wherein provision is made for proceeding against any person who "is liable to the judgment debtor in any sum * * * to aid in securing satisfaction of the judgment. The Guardian Trust Company brought proceedings in aid directed against itself and the Equitable Life Assurance Society. Was either the Guardian Trust Company, trustee, or the Equitable Life, "liable to the judgment debtor in any sum of money," matured or unmatured, at the time?

Of the four policies involved, all had lapsed by reason of the non-payment of premiums and the non-forfeiture provisions of each had come into operation. As to two of them (New York Life No. 7108244 and Equitable No. 2631881) the policies were on extended insurance, the respective terms of which will expire in September, 1946 and April, 1940. The other policies (New York Life No. 7405226 and Northwestern National No. 148645) are now paid-up policies of $1131 and $900 respectively by virtue of their non-forfeiture and paid-up insurance option features. The first two policies have no cash surrender value. The local cashier of the New York Life Insurance Company testified that policy 7405226 had a cash surrender value payable within thirty days from the anniversary of the policy; later, under cross-examination and after communication with his head office, he testified that the only obligation of his company under the contract was to pay $1131 on February 11, 1938, (the maturity date of this, an endowment policy) or at the time of the prior death of the insured, the plaintiff. There is no evidence in the record as to any cash surrender value attaching to the Northwestern National policy, but the policy itself provides for non-participating paid-up life insurance (in the event of lapse and failure to select a different option) "of a reduced amount payable at the same time and on the same conditions as this policy"; the policy appears to be simply an ordinary life policy, labelled "Insurance Payable at Death," and it seems that the amount of the paid-up insurance will not be available until the death of the plaintiff, and even at that time only to the then named beneficiary of the policy.

Accordingly, it is impossible to hold that

the Guardian Trust Company, trustee, or any one of the life insurance ██ companies was "liable to the judgment debtor (plaintiff herein) in any sum of money." It results that §§10436-14443, GC, cannot be invoked to aid the defendant in the premises.

· This conclusion as to the availability of garnishment as a means of securing satisfaction in such cases is in accord with the authorities. Thus, if the money alleged to be due from the garnishee to the judgment debtor is subject to any condition other than the mere lapse of time, it cannot be reached by garnishment. Overturf v Gerlach, 62 Oh St 127 (1900).

It is on this ground that the great weight of authority holds that the cash surrender value of a life insurance policy cannot be reached by a creditor of the insured where the insured has not performed the acts made necessary by his policy to entitle him to sue the insurer. Van Dyke Co. v Moll, etc., 241 Mich. 255, 217 NW 29 (1928).

If that is true in a case where the assured has it in his power to receive the cash surrender value, it is doubly true in a case like the one at bar where the assured has no power to compel the insurance company to pay him anything.

We do not mean to intimate that the policies are not property in the hands of the insured plaintiff. The plaintiff is one of the contracting parties and consequently is the owner of the promises made by the respective insurance companies. The ownership of such intangibles is properly denominated property. The plaintiff possesses a power by virtue of the contract to change the beneficiaries of the policies. He might change them for a consideration paid to him. He might make his own estate the sole beneficiary. He might assign all his interest in such policies for a price paid and transfer his own powers to a purchaser who might so exercise them as to acquire for himself all the rights under both the terms and the paid-up policies. Obviously the ownership of such intangibles is property when the power to change the beneficiary or to sell the policy is also a privilege unencumbered by any right of a third person that the beneficial designation shall continue unchanged. In addition it is clear that the plaintiff possesses the power to divest his own interest and that of any other person in any policy by entering into a contract of release and cancellation with the insurer; the insurer may pay a consideration therefor. Such a power is property. If policy 7405226 is an endowment policy, plaintiff clearly has, in addition to the powers above mentioned, a contingent interest in the right to receive the amount of the paid up insurance; he may survive February 11, 1938 and so become entitled to the amount of the paid-up policy, although if he dies before that date his estate will never have an interest in such right. Such a contingent interest is property. We point out these elements to indicate the nature of the plaintiff's property. But it is clear that no such property interests are comprehended within the terms of the above numbered sections of the statutes. If. defendant has any power to reach plaintiff's interest in these policies, he has mistaken the form of his remedy. Satisfaction cannot be obtained in such a case by resort to garnishment proceedings in aid.

We are unable to follow defendant's argument that plaintiff was precluded from revoking the trust agreement ██ because of the statutes relating to fraudulent conveyances. §8617 GC, upon which defendant relies, voids a conveyance made upon trust for the exclusive benefit of the settlor. That is not this case. The section further provides that, where a settlor has reserved a power of revocation for his own benefit, a court of equity may compel the exercise of such power at the suit of creditors. That part of the section does not aid defendant, since the plaintiff here has exercised the power of revocation without suit. The plaintiff has thereby taken back to himself whatever property interest he may have transferred to the trustee by the trust agreement; nothing more could be effectuated by resort to the last clause of §8617 GC. Plaintiff now has the complete property in the policies, and his creditors may now proceed by any action that to them seems advisable to subject such property interest to the satisfaction of their claims. But as above indicated, §§10436-10443, GC give no aid to such creditors. And §8617 GC has no relation to the issues of the case.

Defendant cannot justify retention of the policies upon any theory of common-law possessory lien. Despite occasional dicta to the contrary, which upon examination will usually be found to have been enunciated in cases where the bank's right was simply one of set-off, there is no such thing as a general banker's ██ lien for a balance of account. In addition, it is undisputed law that where property has been

placed in a bank for one purpose the bank does not thereby acquire any privilege of retaining the possession of such property for another purpose. Here the policies were placed with the bank solely for trust purposes and in its capacity as trustee. The bank could by no possibility become entitled thereby to retain the ▮▮▮▮▮▮ ▮ possession of the policies for the purpose of securing the payment of a debt owed to the bank.

The recitation in the financial statement cannot change the very clear statement of the trust agreement. At the most it is an erroneous description by the plaintiff of the legal effect of the instruments which he had previously executed. What he had done with the policies was fully covered by his trust agreement and by that agreement he had not expressly created a lien in favor of the Trust Company. It is clear law that a trustee is under the duty of refraining from acts which would be inconsistent with his trust. By the agreement of 1930 the defendant was appointed a trustee of these policies for a specific purpose. When it accepted the trust it assumed certain obligations, of which the paramount one was to con-▮▮▮▮▮▮ ▮ form strictly to the direction of the trust agreement. It is well settled that no trustee, while keeping his possession of the trust can lay claim to the trust fund by setting up an adverse title,· or by setting up a superior title in himself because, in the language of one court

"a contrary rule would render it extremely hazardous to entrust property to another." Miles v Miles, 120 Neb. 436, 233 NW 249;

Or in the trenchant language of another court,
"Honesty and fair dealing requires, when one person has received property from another, under an agreement that he will do something with it, that he should do as he agreed or else return the property to the one from whom he received it." Alumni Assn. v Theological Seminary, 49 N. Y. S. 745 (1898).

The following statement of the broad general principle is found in Bogert on Trusts, p. 332: "The trustee owes the cestui que trust the duty of acting solely for the interest of the cestui que trust. In other words the trustee should not, while administering trust, take any step which may or

will result in his own enrichment. All his proceedings under the trust should be wi h the aim of advancing the interests of the cestui que trust, and with that aim alone. 'It is a general principle that a trustee must act with the most scrupulous good faith. The one great duty arising from this fiduciary relation is to act in all matters relating to the trust wholly for the benefit of the beneficiary. A trustee will not be permitted to manage the affairs of his trust, or to deal with the trust property, so as to gain any advantage, either directly or indirectly, for himself.' Lindsey v Strang, 149 Iowa 690, 126 NW 941, 942."

The court is confronted with a conflict between two policies. On the one hand there is the policy which requires a debtor to pay his just debts; on the other hand there is the policy which requires a trustee to perform strictly the duties imposed upon him by his trust agreement and to account for the trust property in the manner directed in the trust agreement. In the clash between these two policies the latter has prevailed. That is exemplified by the numerous actions in which a creditor who holds collateral for a specific debt has been compelled to return the surplus collateral to his debtor though other debts remain unpaid. **Rubel v Hunt, Rec., 40 Oh Ap 561 (1931). (10 Abs 501).**

It is also illustrated by the well settled rule that one who owes an obligation in a trust capacity cannot set off against it an obligation due to him as an individual. **Andrews v State ex, 124 Oh St 348 (1931).**

The rule prohibiting a trustee from setting off a trust obligation against an individual obligation would go for nothing if the trustee could achieve the same result by means of serving upon itself an order in aid of execution. The policy which prohibits the set-off by one ▮▮▮▮▮▮ ▮ method, also prohibits the acquisition of a lien by the other. The trustee should not be permitted to do indirectly that which it is unlawful for it to do directly.

Accordingly, we must hold that the Guardian Trust Company acquired no lien —possessory, statutory or equitable—on the policies herein involved, and, after the revocation of the trust the failure to deliver the policies upon demand of the plaintiff and their continued retention by the defendant were wrongful and violative of the clear right of the plaintiff to their possession.

The court therefore finds on the issues joined for plaintiff and finds that at the

670

commencement of this action the right of property and the right of possession of each of the following three policies:

Policy of insurance No. 148645, on the life of Arthur A. Stone, issued by the Northwestern National Life Insurance Company, in the principal amount of $10,000.00;

Policy of insurance No. 7405226, on the life of Arthur A. Stone, issued by the New York Life Insurance Company, in the principal amount of $10,000.00,

Policy of insurance No. 7108244, on the life of Arthur A. Stone, issued by the New York Life Insurance Company, in the principal amount of $10,000.00;

were in the plaintiff and that the defendant unlawfully detained the same and the court assesses plaintiff's damages at five cents and renders judgment against the defendant for costs.

The court further finds that as between the parties to this action plaintiff is the owner and is entitled to the possession of

Policy of insurance, No. 2631881, on the life of Arthur A. Stone, issued by the Equitable Life Assurance Society, in the principal amount of $15,000.00,

but that this defendant is not in possession of said policy and has not wrongly detained it from the plaintiff.

The court further finds that the defendant has not acquired any lien on the policy or on the proceeds thereof by virtue of the order in aid of execution which it served on the Equitable Life Assurance Society.